■ NEKITA J. KNIGHT, an Infant, et al., Respondents, v LONG ISLAND COLLEGE HOSPITAL, Appellant. — In an action to recover money damages for personal injuries emanating from medical malpractice, defendant appeals from a judgment of the Supreme Court, Kings County (Levine, J.), dated February 2, 1983, which, upon a jury verdict, was in favor of plaintiffs in the principal amount of $1,300,000 for the infant and $2,264.79 for his guardian on her cause of action.

Judgment reversed, on the law and the facts, and matter remitted to the Supreme Court, Kings County, for a new trial limited solely to the issue of damages.

In view of the fact that defendant hospital has admitted liability for the accident which caused a skull fracture to the infant plaintiff, the sole issue presented for the jury's resolution was the nature and extent of the damages occasioned by said injury.

The award in favor of the infant plaintiff was broken down as follows: $200,000 for physical and/or psychological injury from

the date of the accident to the date of the judgment; $1,000,000 for future physical and/or psychological injury; and $100,000 for special schooling in the future. Notwithstanding the testimony of plaintiffs' expert psychologist to the effect that the infant plaintiff suffers from significant emotional disturbance necessitating that he receive both special education and costly psychotherapy in future years, the jury failed to award any special damages for future psychological therapy.

The law in this State regarding excessive damage awards has been succinctly stated as follows: "If a verdict is insufficient or excessive to such an extent as to indicate that it resulted from sympathy, passion, prejudice or corruption, this court may set it aside or order that the judgment be reversed unless the parties stipulate to an increase or decrease. However, '[t]o avoid usurping the function of the jury, th[is] power should be used only if the verdict is so disproportionate to the injury as to not be within reasonable bounds' * * * A jury's assessment of damages should not be disturbed unless it is so excessive or inadequate that it shocks the conscience of the court * * * Each case must be assessed on its own peculiar facts and circumstances" (*Juiditta v Bethlehem Steel Corp.*, 75 AD2d 126, 138).

We find particularly applicable, in the instant case, the following language from the dissenting opinion of Justice Hopkins in *Miner v Long Is. Light. Co.* (47 AD2d 842, 847, revd 40 NY2d 372): "Yet, where a verdict by the jury is so large, as in this case, the question of excessiveness is not so much whether the size of the verdict outrages the court's conscience, but whether the verdict is clearly beyond what ought to be reasonable compensation to the plaintiff in terms of uniformity and community expectations. In short, the court should not allow verdicts which are far above the average in similar cases to stand. I do not disregard the effect of inflationary medical expenses, or the cost of care which would have had to be administered to Miner who was virtually a paraplegic. Nevertheless, the court, as an exercise of public policy, must control verdicts within flexible limits, but limits there must be" (accord *Senko v Fonda*, 53 AD2d 638, 639; see, also, *Rush v Sears, Roebuck & Co.*, 92 AD2d 1072).

Under the circumstances of this case, it is our conclusion that the verdict rendered, particularly the award of $1,000,000 for future physical and psychological injury, was excessive. Plaintiffs' expert pediatrician testified on three occasions that he was unable to offer a definitive prognosis with respect to the injured infant. He noted only that in the area of emotional problems there was likely to be "some residue, but the degree of it will depend upon what treatment the child gets and how he handles it and how he responds to it."

The instant case is markedly distinguishable from *Rowan v County of Nassau* (91 AD2d 608, mot for lv to app den 58 NY2d 609), wherein an award of $800,000 was deemed warranted based upon the proof of serious and permanent injuries to the plaintiff's brain and to other parts of her body. At bar, a much larger award was rendered irrespective of the equivocal nature of the proof and the failure of plaintiffs to satisfy their burden of proof with respect to the claim of future permanent injuries. As respects the claim of the plaintiff mother, the jury awarded her the full amount of the infant's hospital bill, notwithstanding the fact that a portion thereof represented treatment rendered prior to the accident. Given the nature of the proof and the circumstances of this case, the amount of the award was excessive.

We note also that the trial court erred in permitting plaintiff's expert psychologist to testify that, based upon a psychological examination of the infant conducted on the eve of trial, the infant evinced an organic brain syndrome referred to as attention deficit disorder. This testimony was admitted notwithstanding the fact that plaintiffs had earlier served a medical report on defendant wherein said expert specifically stated that he could not support the finding of an organic problem. Moreover, defense counsel asserted at oral argument of this appeal that he had no advance notice that plaintiffs' psychologist would testify that there was organic brain dysfunction and had not prepared to meet this unexpected testimony by a psychologist who, up to this point, had not found organic brain damage.

As provided in section 672.8 of the Rules of the Second Department (22 NYCRR): "Unless an order to the contrary is made or unless the judge presiding at the trial, in the interests of justice and upon a showing of good cause, shall hold otherwise, the party seeking to recover damages shall be precluded at the trial from offering in evidence any part of the hospital records and all other records * * * not made available pursuant to this Part, and no party shall be permitted to offer any evidence of injuries or conditions not set forth or put in issue in the respective medical reports previously exchanged, nor will the court hear the testimony of any physician whose medical reports have not been served as provided by this Part".

In our view, good cause has not been shown, in the instant case, for the admittance into evidence of the testimony in question. The explanation proffered as to why the diagnosis of an organic problem had been omitted from said medical report was that the expert now had an opinion with reasonable probability based upon further testing and evaluations. In view of defendant's surprise and its unpreparedness to cross-examine with

reference to the expert's new psychological opinion, the admission of this testimony was an improper exercise of the trial court's discretion.

Accordingly, the verdict must be set aside and a new trial conducted solely with respect to the issue of damages. Gibbons, J. P., Bracken and Weinstein, JJ., concur.

Lawrence, J., dissents, with the following memorandum: While I agree that the verdict in favor of the infant plaintiff is excessive, I would grant a new trial with respect to the issue of damages as to the infant plaintiff, only if the guardian fails to stipulate to reduce the verdict in favor of the infant plaintiff to $400,000 and to the entry of an amended judgment in that reduced amount, in which event I would affirm the judgment, as so reduced and amended.

The infant plaintiff was born on March 14, 1975, at the defendant hospital, after a normal pregnancy. At the time of his mother's discharge on March 17, 1975, the doctors informed her that the infant was experiencing tremors and they wanted to keep him another three or four days to run tests. On March 19, 1975, a nurse dropped the infant on his head and he sustained a skull fracture. The infant's claims in this case are based on alleged resulting brain damage.

I cannot agree that it was error for the trial court to permit Dr. Seiden, plaintiffs' expert psychologist, to testify, based on a physical examination conducted on the eve of trial concerning "organic brain syndrome". Clearly, following service of the bill of particulars, as early as 1976, defense counsel was aware that the infant was claiming possible brain damage. In a medical report exchanged in May, 1982, Dr. Charash, a psychiatric neurologist, stated: "He [the infant] exhibits at the present time, *symptoms which are suggestive of organic minimal cerebral dysfunction. Further time and observation will be necessary to clarify this*" (emphasis added). Furthermore, a report of Dr. Seiden, dated July 20, 1982, which was forwarded to defendant, set forth in part, "Based on my psychological evaluation of Nekita *I can neither rule out nor support Dr. Charash's impression of organic dysfunction*" (emphasis added); and the supplemental bill of particulars received by defense counsel on August 27, 1982 sets forth with respect to the infant: *"He has an organic cerebral dysfunction"* (emphasis added). Clearly, defense counsel was put on notice of the nature of the infant plaintiff's claim and the nature of the testimony to be offered. Additionally, apparently by court order (although the record is not entirely clear on this point), defense counsel was permitted to have the infant examined by three doctors of his own choosing *shortly before*

*trial:* Dr. Kymisses, a psychiatrist, on October 19, 1982; Dr. Sherer, a psychologist, on November 18, 1982; and Dr. Kaplan, a psychiatric neurologist, on July 15, 1982. Dr. Kaplan had previously examined the infant on October 11, 1976 on behalf of defendant. Dr. Sherer examined the infant 20 days before the trial commenced and performed many of the same tests as Dr. Seiden. Dr. Sherer's analysis of those tests formed the basis for his opinions in this case.

In view of all of the foregoing, particularly the fact that Dr. Sherer, defendant's expert, had so recently examined the infant, the ruling allowing Dr. Seiden to testify to organic brain disorder was well within the court's discretion "in the interests of justice" (22 NYCRR 672.8). Noteworthy is the fact that although defense counsel claims surprise, he did not call as witnesses any of the three doctors who examined the infant on defendant's behalf. On oral argument of this appeal, his explanation was that he did not think it was necessary to call them.

Although I agree with the majority that the verdict as to the infant was excessive, I disagree with my colleagues that a new trial as to damages should be granted in the first instance. As aforesaid, the infant was born in March, 1975. He is now nine years old. Accepting as credible the medical testimony that he needs special schooling and costly psychotherapy — which his family obviously cannot now afford — and considering the testimony of plaintiff's medical experts which was not disputed by other medical testimony, we should at least afford the infant the option of electing to accept $400,000 in lieu of a new trial as to damages, and possibly avoid further protracted delays in concluding this matter. In my opinion, the evidence at trial amply supports a verdict in that amount.

I also cannot agree that the verdict in favor of the plaintiff mother for the amount of the hospital bill in the sum of $2,264.79, which has been paid, and for which apparently there is a lien, is excessive or understand why that issue was reached by my learned colleagues. The trial court ruled, without objection, that "[t]he mother's cause of action will be limited to the claim for the amount of the lien of $2,264.79". Defense counsel initially agreed with the trial court that the jury could not bring in a verdict for a lesser amount or for a higher amount. Although counsel subsequently (the following court day) submitted to the court that he thought that the amount of the hospital bill, $2,264.79, was an "incorrect number" for the jury to award, he did not articulate a reason, based upon the evidence, for the submission to the jury of any lesser amount or suggest any lesser amount the court should submit to the jury. Later, in

summation, defense counsel exploited the ruling, saying to the jury: "Ladies and gentlemen, these lawyers brought a lawsuit on behalf of the mother for $100,000. They knew that *her whole claim is only $2,200* and yet, they sued my client for $100,000" (emphasis added). I do not understand how he can now be heard to complain that the verdict in favor of the plaintiff mother is excessive.