■ JENNIE TARANTOLA, Respondent, v SHIRLEY BENNETT, as Executrix of WILLIAM BENNETT, Deceased, Appellant, et al., Defendant.—In a medical malpractice action to recover damages for personal injuries, etc., the defendant Shirley Bennett, the executrix of the estate of Dr. William Bennett, appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Kings County (Clemente, J.), entered March 12, 1987, as, upon a jury verdict, is in favor of the plaintiff, and against the estate in the principal sum of $800,000.

Ordered that the judgment is affirmed insofar as appealed from, with costs.

After falling and sustaining a blow to her head, the then-72-year-old plaintiff was taken to the emergency room of Community General Hospital in Sullivan County, where she was examined by the appellant's decedent, Dr. Bennett. There she vomited and complained of pain. Dr. Bennett was aware that the plaintiff had a history of hypertension and noted that her blood pressure was significantly elevated. He was also apprised of the fact that the plaintiff had suffered a temporary loss of consciousness after striking her head. Nonetheless, after finding the plaintiff neurologically intact, Dr. Bennett discharged her from the hospital, prescribing bed rest and Darvon, a pain-killer. Several hours later, the plaintiff suffered a stroke resulting in partial paralysis of the right side of her body.

To substantiate her claim of medical malpractice, the plaintiff presented an expert witness, a board-certified neurologist, who testified that Dr. Bennett departed from accepted medical

practice by failing to admit the plaintiff for the purpose of monitoring her blood pressure; by failing to prescribe medication to reduce her blood pressure; by failing to measure the clotting time of the plaintiff's blood; by prescribing an aspirin compound which promoted bleeding and by failing to order a CAT scan.

In addition to the proof adduced by the plaintiff, the appellant's own medical expert conceded that when a patient of advanced age sustains a blow to the head and presents symptoms including elevated blood pressure, loss of consciousness, a history of hypertension, and possibly an episode of projectile vomiting, an emergency room physician should assess these known risk factors in determining whether the patient faces a reasonable medical possibility of suffering a stroke. The appellant's medical expert further conceded that Darvon, which contains aspirin, diminishes blood clotting and prolongs bleeding time. Thus, the taking of Darvon could have accelerated the intracerebral bleeding experienced by the plaintiff which eventually led to her stroke.

We find, in light of the foregoing testimony, that the jury's resolution of the factual issues in the plaintiff's favor was based upon a fair interpretation of the evidence (see, Cohen v Bugatch, 121 AD2d 426; Nicastro v Park, 113 AD2d 129) and that there is no reason to disturb the verdict, which was supported by the weight of the credible evidence (see, O'Connor v Graziosi, 131 AD2d 553, lv denied 70 NY2d 613).

Similarly unavailing is the appellant's contention that the plaintiff failed to establish that Dr. Bennett's negligence was a proximate cause of her injuries. Viewing the evidence in the light most favorable to the plaintiff, there was sufficient evidence adduced from which a reasonable person might conclude that each of the several acts of malpractice was, more probably than not, a substantial cause of the plaintiff's injuries (see, O'Connor v Graziosi, supra; Mortensen v Memorial Hosp., 105 AD2d 151, 159; Lipsius v White, 91 AD2d 271, 276-277).

Finally, under the particular facts and circumstances of this case, the award of $800,000 does not shock the conscience of the court (see, Petosa v City of New York, 63 AD2d 1016, 1017; see also, Knight v Long Is. Coll. Hosp., 106 AD2d 371) and does not deviate materially from what would be meaningful compensation. Mollen, P. J., Mangano, Eiber and Sullivan, JJ., concur.