■ PAUL DeFILIPPO, Respondent, v NEW YORK DOWNTOWN HOSPITAL et al., Appellants, et al., Defendant. [782 NYS2d 25]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered June 4, 2003, which, insofar as appealed from, denied the summary judgment motion by defendant Homayoun Sasson, M.D., sued herein as Dr. Sasson, to the extent such motion sought summary judgment dismissing the medical malpractice cause of action against such defendant, and denied the cross motion by defendant New York University Downtown Hospital, sued herein as The New York Downtown Hospital, for summary judgment dismissing the complaint as against such defendant, unanimously reversed, on the law, without costs, and the motion and cross motion granted to the extent previously denied. The Clerk is directed to enter judgment in favor of defendant Homayoun Sasson, M.D., sued herein as Dr. Sasson, and in favor of defendant New York University Downtown Hospital, sued herein as The New York Downtown Hospital, dismissing the complaint as against each of them.

While plaintiff was placing steel sleeves in a container, the container tipped over and crushed his right pinky finger, resulting in the amputation of the fingertip, among other injuries. The theory of plaintiff's case against defendant hospital and defendant physician (Dr. Sasson) is that some alleged deviation from accepted standards of medical practice on their part (for example, the hospital's failure to preserve the fingertip) proximately prevented the reattachment of the severed part. The failure to reattach the fingertip is the only injury for which the hospital and Dr. Sasson are alleged to be responsible. This contention is refuted, however, by the sole nonspeculative and reasonably certain medical expert opinion in the record, which establishes that reattachment of the fingertip simply was not a viable option.

Dr. Sasson, the board-certified hand surgeon to whom plaintiff was referred by the hospital, personally examined the stump of plaintiff's finger before surgery was performed. Based on that examination, Dr. Sasson wrote in his operative report: "The patient was informed that in [view] of the mechanism of the injury, i.e., the crushing amputation/avulsion of the distal aspect of this finger, a replantation [reattachment] would not be a good option even if the piece were preserved by the hospital." At his deposition, Dr. Sasson explained that he reached this conclusion "[b]ecause of the way the stump looked." Later in the deposition, the doctor elaborated on this point as follows: "The stump—if you divide the finger into three segments, he had lost about the distal third of the finger, the distal half of the finger had no skin around it and all it had was basically

crushed and nonviable bone. No tendons preserved there, no nerves, no vessels. . . . [T]he proximal third had only skin and bone. So essentially the distal third had been lost, the middle third was without any skin and with nonviable bone and only the proximal third was viable, which is what he was left with."

In response to this competent medical opinion, plaintiff's medical expert—a general surgeon who, unlike Dr. Sasson, never saw the untreated stump of plaintiff's finger—could offer only the thought that, if he had examined plaintiff's injury, it was "perhaps" possible that he would have reached a different conclusion. As the motion court seems to have recognized, this is nothing more than speculation, and falls far short of the standard of a reasonable degree of certainty that expert opinion evidence is required to meet. Although the motion court took the position that Dr. Sasson's operative report raised an issue as to the viability of reattachment simply by discussing it, that report, as previously noted, concluded that reattachment "would *not* be a good option" (emphasis added). Thus, on this record, Dr. Sasson's opinion that reattachment was not a good option is uncontradicted by any competent evidence.

Furthermore, even if the report could somehow be construed as presenting reattachment as a possibility, Dr. Sasson's uncontroverted deposition testimony refutes any such interpretation. After all, he testified that, not only was the distal third of the finger (the fingertip) entirely lost, "the middle third was without any skin and with nonviable bone." Plaintiff's expert did not offer any explanation of how the severed distal third of the finger could have been reattached, given the devastating injuries to the middle third.

In view of the foregoing, whether or not plaintiff has raised an issue of fact concerning a possible departure from medical standards on the part of either the hospital or Dr. Sasson, he has failed to present a nonspeculative basis for a finding that any act or omission of the medical defendants was the proximate cause of any injury to him (*see Raymundo v Westchester County Med. Ctr.*, 292 AD2d 437 [2002], *lv dismissed* 98 NY2d 737 [2002] [summary judgment was properly granted to medical defendants where defense experts established that plaintiff's severed finger could not be reattached regardless of defendants' alleged departures, and plaintiff's medical expert failed to rebut this point]). We do not disagree that there may have been a departure in the hospital's alleged failure to preserve the fingertip. The difficulty for plaintiff, however, is that the record establishes that, even if the fingertip had been preserved, the outcome of plaintiff's treatment would have been the same. Ac-

cordingly, we reverse the motion court's order insofar as appealed from, and grant the hospital and Dr. Sasson summary judgment dismissing the complaint as against each of them in its entirety. Concur—Mazzarelli, J.P., Andrias, Friedman and Gonzalez, JJ.