■ JONATHAN PEREZ, Respondent, v ST. JOHN'S EPISCOPAL HOSPITAL SOUTH SHORE et al., Defendants, and INTERFAITH MEDICAL CENTER et al., Appellants. [796 NYS2d 399]—

In an action, inter alia, to recover damages for medical malpractice, the defendants Interfaith Medical Center and Max Jean-Gilles appeal, as limited by their brief, from so much of a revised judgment of the Supreme Court, Kings County (Spodek, J.), entered December 16, 2003, as, upon a jury verdict finding the defendant Interfaith Medical Center 13% at fault and the defendant Max Jean-Gilles 23% at fault, and awarding the plaintiff damages in the sums of $3,000,000 for past pain and suffering, $28,333,000 for future pain and suffering, $9,112,000 for future medical expenses, $44,000,000 for future custodial care, $4,285,000 for future rehabilitation services, and $6,078,907 for future lost earnings, and upon an order of the same court dated March 5, 2003, denying that branch of their motion pursuant to CPLR 4404 (a) which was to dismiss the complaint insofar as asserted against them and granting that branch of their motion which was to set aside the verdict as against the weight of the evidence and for a new trial or, in the alternative, to reduce the verdict as to damages to the extent of setting aside the verdict as to damages and directing a new trial with respect thereto unless the plaintiff stipulated to reduce the verdict as to damages for past pain and suffering from the sum of $3,000,000 to the sum of $900,000, for future pain and suffering from the sum of $28,333,000 to the sum of $1,500,000, for future medical expenses from the sum of $9,112,000 to the sum of $800,000, for future custodial care from the sum of $44,000,000 to the sum of $2,000,000, for future rehabilitation services from the sum of $4,285,000 to the sum of $1,500,000, and for future lost earnings from the sum of $6,078,907 to the sum of $800,000 and, upon the plaintiff's stipulation, is in favor of the plaintiffs and against them, and the defendants Muhammed Monowar Mullick and Carlos A. Menera separately appeal, as limited by their brief, from stated portions of the same judgment.

Ordered that the appeal by the defendants Muhammed Monowar Mullick and Carlos A. Menera is dismissed as abandoned, without costs or disbursements (see 22 NYCRR 670.8 [c], [e]); and it is further,

Ordered that the revised judgment is reversed insofar as appealed from, on the law, with costs, that branch of the motion of the defendants Interfaith Medical Center and Max Jean-Gilles which was to dismiss the complaint insofar as asserted against them is granted, the complaint is dismissed insofar as asserted against those appellants, and the order dated March 5, 2003, is modified accordingly.

The infant plaintiff's mother commenced this action on his behalf alleging, inter alia, that the defendant Interfaith Medical Center (hereinafter Interfaith) and the attending physician, the defendant Max Jean-Gilles (hereinafter collectively the appellants) departed from accepted medical practice by failing to administer both a tocolytic and a corticosteroid before she gave birth. A tocolytic is used to delay labor and extend pregnancy, whereas a corticosteroid is used to promote the maturation of fetal lungs and blood vessels. Upon the mother's admission to Interfaith, while she was not in active labor, she presented with ruptured membranes.

The infant plaintiff was born prematurely after 27 weeks of gestation, and was subsequently diagnosed with cerebral palsy. The evidence at trial established, inter alia, that he suffered respiratory distress syndrome (hereinafter RDS) and resultant brain damage due to undeveloped lungs and blood vessels.

The jury returned a verdict in favor of the infant plaintiff and against, among others, the appellants awarding damages. The appellants moved, inter alia, pursuant to CPLR 4404 (a) to dismiss the complaint insofar as asserted against them. The Supreme Court, inter alia, denied that branch of the appellants' motion. We reverse.

To prove a prima facie case of medical malpractice, a plaintiff must demonstrate that the defendant deviated or departed from accepted practice, and that such deviation or departure was a proximate cause of the injury sustained (see Holton v Sprain Brook Manor Nursing Home, 253 AD2d 852 [1998]; Bloom v City of New York, 202 AD2d 465 [1994]; Amsler v Verrilli, 119 AD2d 786 [1986]).

A verdict is not supported by legally sufficient evidence if there "is no valid line of reasoning and permissible inferences could possibly lead rational [persons] to the conclusion reached by the jury on the basis of the evidence presented at trial" (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]; see Nicastro v Park, 113 AD2d 129 [1985]).

The issue at trial was whether the appellants departed from the standard of care at the time of the infant plaintiff's birth in 1993 by failing to administer both a tocolytic and a corticosteroid

to the mother to delay labor long enough to promote the maturation of fetal lungs and blood vessels of the 27-week fetus.

Based upon our review of the record, there is no valid line of reasoning or permissible inferences which could have led the jury to conclude that the defendants departed from accepted medical practice at the time of the infant plaintiff's birth.

While the infant plaintiff's expert obstetrician-gynecologist testified that the use of tocolytics on patients with ruptured membranes was appropriate, the evidence also demonstrated that the presence of ruptured membranes exposed the fetus to the risk of infection, and that it was dangerous to administer tocolytics to patients with ruptured membranes.

In addition, the evidence established that there were conflicting studies and opinions in and prior to 1993 as to the proper course of treatment regarding the use of corticosteroids on preterm mothers. The evidence further revealed that while some hospitals used corticosteroids, others did not based upon the drug's harmful side effects. Because of this controversy, a meeting was convened at the National Institute for Health (hereinafter the NIH) to develop a proper protocol, which resulted in a report published in November 1994 recommending the use of corticosteroids. Thereafter, in 1995, the American Board of Obstetrics and Gynecology endorsed that recommendation.

We do not state that in order to establish a deviation of accepted medical practice, it was necessary to demonstrate a standard of care established by the NIH. However, under the circumstances of this case, due to the conflict of opinion with respect to the proper course of treatment, as well as the accepted standard of care, we cannot find that in 1993, the appellants departed from accepted medical practice.

Accordingly, the complaint should have been dismissed insofar as asserted against the appellants. H. Miller, J.P., Cozier, Goldstein and Skelos, JJ., concur.