■ JOHN ELIAS, Respondent, v RONALD L. BASH et al., Defendants, and JYOTI P. GANGULY et al., Appellants. [863 NYS2d 73]—

In an action to recover damages for medical malpractice and wrongful death, etc., the defendants Jyoti P. Ganguly and Brian S. Geller appeal from (1) an order of the Supreme Court, Suffolk County (Baisley, J.), dated July 13, 2006, which denied their motion pursuant to CPLR 4404 to set aside, as against the weight of the evidence, a jury verdict on the issue of liability finding Jyoti P. Ganguly 2.5% at fault and Brian S. Geller 10% at fault for the injuries sustained by the plaintiff and the plaintiff's decedent or, in the alternative, to set aside, as excessive, a jury verdict on the issue of damages finding that the plaintiff and the plaintiff's decedent sustained damages in the sum of $13,110,000, and for leave to renew their prior motion pursuant to CPLR 4401 for judgment as a matter of law at the close of the plaintiff's case, and (2) a judgment of the same court entered December 3, 2007, which, upon the jury verdicts, and upon the order dated July 13, 2006, is in favor of the plaintiffs and against them in the total sums of $437,385.35 and $1,727,686.67, respectively.

Ordered that the appeal from the order dated July 13, 2006 is dismissed; and it is further,

Ordered that the judgment is reversed, on the law, that branch of the motion of the defendants Jyoti P. Ganguly and Brian S. Geller which was for leave to renew their motion pursuant to CPLR 4401 for judgment as a matter of law at the close of the plaintiff's case is granted, upon renewal, the motion

pursuant to CPLR 4401 for judgment as a matter of law is granted, the complaint is dismissed insofar as asserted against those defendants, the action is severed against the remaining defendants, and the order dated July 13, 2006 is modified accordingly; and it is further,

Ordered that one bill of costs is awarded to the appellants.

The appeal from the intermediate order dated July 13, 2006 must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (*see Matter of Aho*, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (*see* CPLR 5501 [a] [1]).

On January 17, 1999 the 36-year-old decedent Sabine Elias gave birth to her fourth child by cesarean section. About an hour after the delivery, the decedent experienced a fainting episode, and a drop in blood pressure. In an effort to determine the cause of these symptoms, the decedent's attending physician called in several consulting physicians, including a cardiologist, the appellant Jyoti P. Ganguly. After performing an echocardiogram and electrocardiogram on the afternoon of January 17, 1999, Ganguly found no evidence of any acute cardiovascular problem, and informed the attending physician that he had ruled out a heart attack. He also advised the attending physician that she should watch for possible bleeding due to the decedent's low blood pressure. Later in the day, when Ganguly returned to see the decedent again, he indicated in his consultation note that she might be experiencing pelvic bleeding, and recommended that a CT scan be performed. The attending physician acknowledged that Ganguly told her, on January 17, 1999, that the issue of potential bleeding must not be left unresolved, and that she understood that leaving the issue unresolved was a matter of life and death.

Ganguly next saw the decedent on the evening of January 18, 1999 and noted that she was experiencing tachycardia, or fast heartbeat. Although the administration of medication briefly brought the decedent's heartbeat back to normal, its rate soon rose again, leading Ganguly to conclude that the underlying cause of the irregular heartbeat had not been resolved. Ganguly wrote a note in the decedent 's chart at 9:25 P.M. on January 18, 1999 indicating that the possibility of bleeding was growing stronger, and should be reassessed by the attending physician. In addition, before leaving the decedent at 11:50 P.M. that night, Ganguly wrote a final note in her chart stating that the only remaining possibility appeared to be intra-abdominal bleeding.

The decedent died at 9:00 P.M. on January 19, 1999 when she went into cardiac arrest, as Ganguly's partner, the appellant Brian S. Geller, was in the process of inserting a Swan-Ganz catheter line to measure the pressure in her pulmonary artery. A pathologist who performed an autopsy determined the causes of death to be an amniotic fluid embolism producing disseminated intravascular coagulation, and massive bleeding in the arteries supplying the rectus muscle.

At the close of the plaintiff's case, Ganguly and Geller together moved for judgment as a matter of law pursuant to CPLR 4401. The court reserved decision. At the conclusion of the liability phase of the trial, the jury returned a verdict finding Ganguly 2.5% at fault and Geller 10% at fault for the decedent's death. The jury apportioned the balance of fault among other physicians involved in the decedent's care, including the attending physician, who was found 50% at fault. Ganguly and Geller thereafter moved, inter alia, for leave to renew their motion pursuant to CPLR 4401 for judgment as a matter of law. The trial court denied the motion. We reverse.

The required elements of proof in a medical malpractice action are a deviation or departure from good and accepted standards of medical practice, and evidence that such departure was a proximate cause of the injury (*see Wicksman v Nassau County Health Care Corp.*, 27 AD3d 644 [2006]; *Perez v St. John's Episcopal Hosp. S. Shore,* 19 AD3d 389, 390 [2005]; *Abrams v Ho,* 3 AD3d 544, 545 [2004]; *Prestia v Mathur,* 293 AD2d 729, 730 [2002]). A trial court may direct judgment in a defendant's favor pursuant to CPLR 4401 where, affording the plaintiff every favorable inference from the evidence submitted, there is no rational process by which the jury could find in the plaintiff's favor (*see Szczerbiak v Pilat,* 90 NY2d 553, 556 [1997]; *Godlewska v Niznikiewicz,* 8 AD3d 430, 431 [2004]; *Prestia v Mathur,* 293 AD2d at 730).

The evidence presented at trial demonstrated that Ganguly fulfilled his duty as a consulting cardiologist by reporting his findings to the attending physician, and making appropriate suggestions for follow-up treatment. Although the plaintiff's expert opined that Ganguly should have taken additional steps to ensure that the bleeding was resolved either by exploratory surgery or embolization on January 17, 1999, it is undisputed that Ganguly clearly and repeatedly advised the attending physician, who was an obstetrician, of the necessity of checking for intra-abdominal bleeding. Moreover, it is also undisputed that Ganguly' s own practice was limited to cardiology, and that he did not practice obstetrics, gynecology, or surgery. Under these

circumstances, there is no rational basis to support a jury finding that Ganguly departed from good and accepted practice by failing to take steps, beyond the normal scope of his role as a consulting cardiologist and outside of his area of specialization, to resolve a suspected post-surgical bleed (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 323-325 [1986]; *Aharonowicz v Huntington Hosp.*, 22 AD3d 615 [2005]; *Boone v North Shore Univ. Hosp. at Forest Hills*, 12 AD3d 338, 339 [2004]; *Yasin v Manhattan Eye, Ear & Throat Hosp.*, 254 AD2d 281 [1998]; *Al Malki v Krieger*, 213 AD2d 331, 333-334 [1995]).

Furthermore, there is no rational process by which the jury could have found in favor of the plaintiff and against Geller, whose only contact with the decedent involved the insertion of a Swan-Ganz catheter line moments before her death. While the plaintiff's expert testified that it was a departure from good and accepted practice for Geller to place a Swan-Ganz catheter into the decedent, he did not opine that the insertion of the catheter was a proximate cause of the decedent's death. Moreover, the pathologist who performed the autopsy concluded that the placement of the catheter did not contribute to the decedent's death, and the defense expert testified that nothing that Geller did or did not do after Ganguly signed off duty on the morning of January 19, 1999 "could in any way have changed the course of events." Accordingly, there was no evidence that any alleged departure by Geller was a proximate cause of the decedent's death (*see Wicksman v Nassau County Health Care Corp.*, 27 AD3d at 645; *Godlewska v Niznikiewicz*, 8 AD3d at 431; *Abrams v Ho*, 3 AD3d at 545).

In light of our determination, we need not reach the appellants' remaining contentions. Rivera, J.P., Skelos, Dickerson and Eng, JJ., concur.