| **Yusuff v El-Eshmawi** |
|:---:|
| 2024 NY Slip Op 33175(U) |
| September 6, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 805145/2014 |
| Judge: Kathy J. King |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. KATHY J. KING**  PART  **06**

*Justice*

-------------------------------------------------------------------------------X

CECILIA YUSUFF, AS ADMINISTRATRIX OF THE
ESTATE OF MOHAMMED FAROUK YUSUFF, AND
CECILIA YUSUFF, INDIVIDUALLY,

                        Plaintiffs,

                        - v -

AHMED M. EL-ESHMAWI, AMIT AUDUMBAR PAWALE,
ANELECHI ANYANWU, FEDERICO MILLA, SEAN PINNEY,
MOUNT SINAI MEDICAL CENTER,

                        Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 805145/2014 |
| MOTION DATE | 04/11/2022 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90

were read on this motion to/for            JUDGMENT - SUMMARY       .

Upon the foregoing documents, Defendants Ahmed M. El-Eshmawi "Dr. El-Eshmawi"), Amit Audumbar Pawale ("Dr. Pawale"), Anelechi Anyanwu ("Dr. Anyanwu"), Federico Milla ("Dr. Milla"), Sean Pinney, M.D. ("Dr. Pinney") and Mount Sinai Medical Center (collectively referred to as "Defendants") move pursuant to CPLR 3212, for an Order for summary judgment and dismissal of the Complaint on the ground that there are no triable issues of fact, and that the moving Defendants cannot be held liable as a matter of law; and amending the caption to remove those parties and/or discontinued from the subject matter

Plaintiffs Cecilia Yusuff, as Administratrix of the Estate of Mohammed Farouk Yusuff, and Cecilia Yusuff ("Plaintiffs") oppose the motion.

## THE INSTANT MOTION

The gravamen of the claims in Plaintiffs' complaint allege that the Defendants were negligent in the procurement and implantation of a substandard and unsuitable donor heart into the

**805145/2014  YUSUFF, CECILIA vs. EL-ESHMAWI, AHMED M.**
**Motion No. 003**

Page 1 of 15

[* 1]

decedent resulting in his death. Specifically, Plaintiffs allege that the Defendants departed from good and accepted medical practice and were negligent in the care and treatment rendered to the Plaintiff's decedent ("decedent") by the Defendants from on or about May 8, 2012, through on or about May 30, 2012 including, inter alia, (1) performing an orthotopic heart transplant with a LVAD (Left Ventricular Assist Device) explantation and AICD (Automatic Internal Cardioverter Defibrillator) removal; (2) failing to timely and properly perform proper testing of the donor heart prior to procuring and transplanting it; (3) failing to appreciate the findings of the diagnostic tests performed; (4) failing to visualize defects in the donor heart; failing to review and obtain the donor medical history; failing to review the records of the donor facility; (5) negligently advising the decedent to accept transplantation of a substandard heart when there was no urgent/emergent need; (6) failing to obtain informed consent for the surgery performed, and negligently allowing unqualified individuals to treat the decedent.

Defendants argue in the instant motion that the treatment and care rendered to decedent by Defendants was appropriate and in accordance with good and accepted standards of care and were not the proximate cause of the decedent's alleged injuries.

## BACKGROUND

At the time of the treatment at issue, the decedent was 60 years old, and had been referred to Defendant Dr. Pinney, an employee of Defendant Mount Sinai Medical Center ("Mt. Sinai"), by his primary care physician for consideration of a heart transplantation, based on a diagnosis of ischemic cardiomyopathy Dr. Pinney saw the decedent on September 2, 2011, at which time his impression was that the decedent was first to be evaluated for heart transplantation, and then for mechanical support. During this visit, Dr. Pinney discussed "the indications evaluation process and outcomes with cardiac process."

805145/2014  YUSUFF, CECILIA vs. EL-ESHMAWI, AHMED M.
Motion No. 003

Page 2 of 15

2 of 15

[* 2]

On September 22, 2011, Defendant Dr. Anyanwu performed an implantation of an intracorporeal ("LVAD") as a bridge to the anticipated cardiac transplant. Subsequently, between December 2011 and January 2012, the decedent developed an infection at the site of the LVAD drive line, and was started on antibiotics (Ciprofloxacin) to treat the infection. An examination on February 15, 2012, revealed that the antibiotics were effectively treating the infection.

Dr. Pinney testified that after the decedent was started on Ciprofloxacin, Dr. Pinney designated him as a New York Heart Association Class 2 to 3, which, meant the decedent "has functional limitations whereby he cannot walk, climb stairs, exercise as much as a person without heart disease would walk." However, Dr. Pinney testified that at that point, the decedent was able to walk four blocks on a flat surface, and that this was an improvement from the decedent's functional limitations in December, 2011.

The Plaintiff testified that in May, 2012, she and the decedent received a call from Mt. Sinai Hospital advising them that a donor heart had been identified and that they were to go to Mt. Sinai so a transplant could take place. On May 7, 2012, the donor's wife consented to use of the donor organ "Telephonic Consent Form For Donation of Organs and Tissues by Authorized Party".

The heart donor was a 49-year-old male who was status post motorcycle accident on May 6, 2012. The donor was transferred from Southampton Hospital to Stony Brook University Hospital, with a Glasgow Coma Scale of 3. A head CT showed injuries consistent with diffuse brain injury and/or anoxic event. The records indicate that the donor had lost pulse twice while at Southampton Hospital, and had a cardiac arrest with "17 minutes of downtime." He was intubated, and it was noted that the donor's pupils were dilated and fixed, and that he was tachycardic and hypotensive. An EKG done on May 6, 2012, indicated the possibility of a "lateral injury or acute

805145/2014   YUSUFF, CECILIA vs. EL-ESHMAWI, AHMED M.                          Page 3 of 15
   Motion No.  003

3 of 15

[* 3]

infarct," and noted "Prolonged QT, Abnormal ECG." A chest x-ray performed on May 7, 2012, showed bilateral pleural effusion. On May 7, 2012, after the first evaluation for brain death was performed, a 2D echocardiogram was conducted. The report stated that it was a "technically difficult study," and that only "limited views" were taken to attempt to assess heart wall motion abnormalities. On May 7, 2012, the donor was declared brain dead.

A cardiovascular catheterization with angiogram was performed on the donor on May 8, 2012, which showed moderate pulmonary hypertension, left ventricular hypertrophy, moderate elevation of right atrial, right ventricular and pulmonary artery pressures, and left ventricular diastolic dysfunction. Diagrams (organ physical assessment) of the donor's injuries indicated that in addition to extensive head injuries, the donor had a six-inch abrasion to the right chest wall.

A history provided to the New York Organ Donor transplant coordinator by the donor's wife documented that the donor was a smoker for 20+ years, of less than a pack a day, who had quit smoking cigarettes two years prior. The donor had smoked a pipe every week for over 20 years and drank 1-6 beers a day for over 20 years. Just prior to explantation of the donor's heart, his weight was noted to be 253.53 lbs.

The donor heart was explanted on May 9, 2012, and was noted to be "large." It was placed in an ice box for transportation back to Mt. Sinai. At the hospital, the decedent signed the consent form, which indicated that he had been advised of the potential benefits, risks, and side effects associated with the procedure, and that he had been given the opportunity to ask questions. Dr. Anyanwu also signed the form. Dr. Anyanwu performed the transplantation of the heart after an explantation of the LVAD and AICD. The operative note documented that immediately before transplantation, it was observed that "the heart was...heavy consistent with left ventricular hypertrophy." The ischemic time for the donor heart was 154 minutes.

805145/2014   YUSUFF, CECILIA vs. EL-ESHMAWI, AHMED M.                    Page 4 of 15
  Motion No.  003

4 of 15

[* 4]

On May 15, 2012, the Transplant team note stated that the decedent had shortness of breath and looked generally unwell. He also reported abdominal pain, fullness, and a somewhat tense abdomen on exam. The transplant note of May 17, 2012, indicates that the Plaintiff's progressive hemodynamic deterioration was highly suspicious for heart rejection, and that prophylaxis was required to minimize infection risks.

The decedent experienced extensive complications and medical treatment from May 17th through May 23rd of 2012. Various emergent efforts, including surgery, medication, and mechanical support,[1] were made to stabilize the heart, however the Transplant team ultimately assessed the decedent as being in circulatory collapse secondary to right ventricular failure. On May 23, 2012, blood cultures were reported to be positive, and it was believed that the decedent had pneumonia and a pleural effusion. It was concluded that the decedent was not a candidate for re-transplantation. Dr. Pinney noted that the decedent was exhibiting progressive graft dysfunction. The decedent's condition continued to deteriorate, and on May 30, 2012, the decedent expired.

The autopsy report states that the final principal diagnosis was: "[d]onor heart with significant hypertensive and atherosclerotic disease with hypertrophy of both the left (2.0 cm) and right (0.9 cm) ventricles and mild to moderate coronary artery disease, leading to graft dysfunction (biventricular heart failure) in post operative period."

## DISCUSSION

"To sustain a cause of action for medical malpractice, a plaintiff must prove two essential elements: (1) a deviation or departure from accepted practice, and (2) evidence that such departure

---

[1] The Court notes that various mechanical supports were utilized in Plaintiff's medical treatment, such as placement of an extracorporeal membrane oxygen machine (ECMO), intra-aortic balloon pump, and left and right ventricular assist devices (LVAD and RVAD).

805145/2014   YUSUFF, CECILIA vs. EL-ESHMAWI, AHMED M.                          Page 5 of 15
Motion No.  003

5 of 15

was a proximate cause of plaintiff's injury" (*Frye v Montefiore Med. Ctr.*, 70 AD3d 15, 24 [1st Dept 2009]; *see Roques v Noble*, 73 AD3d 204 [1st Dept 2010]; *Elias v Bash*, 54 AD3d 354 [2d Dept 2008]; *DeFilippo v New York Downtown Hosp.*, 10 AD3d 521 [1st Dept 2004]). A defendant moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law by establishing the absence of a triable issue of fact as to the alleged departure from accepted standards of medical practice (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Frye v Montefiore Med. Ctr.*, 70 AD3d at 24), or by establishing that the plaintiff was not injured by such treatment (*see McGuigan v Centereach Mgt. Group, Inc.*, 94 AD3d 955 [2d Dept 2012]; *Sharp v Weber*, 77 AD3d 812 [2d Dept 2010]; *see generally Stukas v Streiter*, 83 AD3d 18 [2d Dept 2011]). To satisfy this burden, a defendant must present expert opinion testimony that is supported by the facts in the record, addresses the essential allegations in the complaint or the bill of particulars, and is detailed, specific, and factual in nature (*see Roques v Noble*, 73 AD3d at 206; *Joyner-Pack v Sykes*, 54 AD3d 727 [2d Dept 2008]; *Koi Hou Chan v Yeung*, 66 AD3d 642 [2d Dept 2009]; *Jones v Ricciardelli*, 40 AD3d 935 [2d Dept 2007]). Furthermore, to satisfy the burden on a motion for summary judgment, a defendant must address and rebut specific allegations of malpractice set forth in the plaintiffs' bill of particulars (*see Wall v Flushing Hosp. Med. Ctr.*, 78 AD3d 1043 [2d Dept 2010]; *Grant v Hudson Val. Hosp. Ctr.*, 55 AD3d 874 [2d Dept 2008]; *Terranova v Finklea*, 45 AD3d 572 [2d Dept 2007]).

Once defendant establishes prima facie entitlement to judgment as a matter of law, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact by submitting an expert's affidavit or affirmation attesting to a departure from accepted medical practice and opining that the defendant's acts or omissions were a competent producing cause of the plaintiff's injuries

805145/2014   YUSUFF, CECILIA vs. EL-ESHMAWI, AHMED M.                                    Page 6 of 15
  Motion No.  003

6 of 15

[* 6]

(*see Roques v Noble*, 73 AD3d at 207; *Landry v Jakubowitz*, 68 AD3d 728 [2d Dept 2009]; *Luu v Paskowski*, 57 AD3d 856 [2d Dept 2008]).

In support of their motion for summary judgment, the moving Defendants submit the expert affirmation of Michael Argenziano, M.D. ("Dr. Argenziano") who is a board-certified Thoracic Surgeon, and the expert affirmation of Maryjane Farr, M.D. ("Dr. Farr") who is board-certified in Internal Medicine, Cardiovascular Disease, Advanced Heart Failure, and Transplant Cardiology. Both physicians reviewed the pleadings, Verified Bill of Particulars, Amended Verified Bill of Particulars, deposition transcripts, medical records from Mount Sinai Hospital, the Mount Sinai Advanced Heart Failure records, the New York Donor Network Records and the Autopsy report.

In sum, each expert opines, that the treatment and care rendered to the decedent by the Defendants was appropriate and in accordance with good and accepted standards of care, and was not the proximate cause of the decedent's alleged injuries and subsequent death.

Dr. Argenziano opines that the donor heart was an acceptable organ for transplantation. He notes that a complete and thorough workup of the donor heart was performed, which included all proper diagnostic testing of the donor heart prior to transplantation, which deemed the heart acceptable. Further, Dr. Argenziano opines that the team at Stony Brook University properly ruled out any significant complications by performing the appropriate testing. Dr. Argenziano opines that the claims regarding a failure to appreciate the donor's coronary artery disease prior to transplantation are entirely without merit, as there is no indication on any of the donor's various studies that coronary artery/atherosclerotic disease was present. Accordingly, he opines that the Defendants were entitled to rely upon the findings and workup of the Stony Brook physicians. Dr. Argenziano further opines that although the angiogram impression noted mild to moderate left ventricle hypertrophy, an angiogram is not a diagnostic study for left ventricle hypertrophy and

805145/2014   YUSUFF, CECILIA vs. EL-ESHMAWI, AHMED M.                    Page 7 of 15
  Motion No.  003

7 of 15

[* 7]

that it is used to access the coronary arteries. Dr. Argenziano opines that the echocardiogram is the gold standard, and the echocardiogram impression here indicated that the size and appearance of the left ventricle and its cavity were normal and appropriate.

Dr. Farr also opines that the decision to use the donor heart was entirely appropriate and within the standard of care. Dr. Farr concurs with Dr. Argenziano's opinion that the workup of the heart was appropriate, and that although the filling pressures were elevated in the heart and the donor presented had tachycardia with hypotension, these symptoms were quickly resolved and would not have caused any damage. Dr. Farr further opines that there were no indications in the diagnostic studies performed at Stony Brook, which would have raised concerns regarding the quality of the heart and justify performing further diagnostic tests. Additionally, Dr. Farr opines that the decedent was properly categorized as a status 1A candidate for heart transplantation due to the complication with his LVAD and driveline infection. As such, it was within good and accepted standards of medical care to accept the next available heart unless there was a significant reason not to do so. In this regard, both Drs. Farr and Argenziano opine that the donor heart was within the acceptable range for transfer.

Regarding the treatment of the decedent post-transplant, Dr. Argenziano opines that the timing and workup, diagnosis, and subsequent treatment of the graft dysfunction was appropriate. According to Dr. Argenziano, the decedent suffered from primary graft dysfunction, which is a known and accepted complication in cardiac transplantation procedures, sometimes occurring in as high as 40% of cases, and has a high morbidity rate, even with optimal care.

Based on the foregoing, the Defendants have established their prima facie entitlement to summary judgment as a matter of law through the expert affirmations of Drs. Argenziano and Farr, which demonstrate that the decision to transplant the donor heart was within the standard of care,

805145/2014   YUSUFF, CECILIA vs. EL-ESHMAWI, AHMED M.
Motion No.  003

Page 8 of 15

8 of 15

as was the medical treatment rendered to the decedent post-transplant, and was not the proximate cause of the decedent's alleged injuries and subsequent death.

In opposition to the motion, Plaintiffs have raised triable issues of fact sufficient to rebut the Defendants' prima facie showing as to whether the donor heart was suitable for transplantation, and whether the donor heart was an appropriate match, based on the expert affirmation of a board-certified Thoracic Surgeon, whose name is redacted. Plaintiff's expert opines, with a reasonable degree of medical certainty, based on a review of the medical records of the decedent and the heart donor, deposition transcripts, and the Defendants' submissions in support of their motion, that the Defendants deviated from good and accepted medical care, and proximately caused decedent's injuries and death.

The expert opines that the standard of care in heart transplants in 2012 required the appropriate selection of a donor heart to match with a recipient, and to ensure that the heart was of sufficient quality to prevent graft dysfunction or other causes of transplant failure. The Plaintiffs' expert opines that it was a departure from good and accepted medical care to transplant the heart of a donor who had a medical history of risk factors which included smoking and alcohol use, chest trauma, cardiac disease and/or hypertrophy, recent hypotension or hypoxemia, and advanced chronological age. Significantly, the Plaintiff's expert opines that the donor heart should have been disqualified.

The Plaintiffs' expert further notes that in addition to the aforementioned cardiac disease risk factors, the donor suffered devastating, life-ending injuries as a result of a motorcycle accident that occurred while the donor was not wearing a helmet. As a result of the accident the donor was in a comatose state for an indeterminate period before being found; suffered brain death due to intracranial bleeding and swelling; and sustained a traumatic injury to the right chest. According

805145/2014   YUSUFF, CECILIA vs. EL-ESHMAWI, AHMED M.
Motion No.  003

Page 9 of 15

9 of 15

to Plaintiffs' expert, the standard donor selection criteria required that there be no history of chest trauma, and that brain death of the donor is associated with an increased risk of ischemia and reperfusion injury.

Contrary to the opinion of Drs. Argenziano and Farr, Plaintiffs' expert notes that the echocardiogram on its face indicated it was limited and potentially incomplete and/or inadequate, and that in such circumstances, the Defendants should not have ignored clear contraindications from other sources of information - namely, the angiogram and visual inspection of the heart, which showed left ventricular cardiac hypertrophy. The Plaintiffs' expert concludes that given the angiogram and visual results, it was incumbent upon the Defendants to treat the donor heart as one with left ventricular cardiac hypertrophy. The expert also opines that in conjunction with the other risk factors noted above, Defendants should have been aware that transplanting a hypertrophied donor heart was a departure from the standard of care, posing unacceptable risks to the decedent.

Lastly, the Plaintiffs' expert opines that the enormous mismatch between the weight of the donor, who weighed 253 lbs., and the decedent who weighed 139 lbs., was well outside acceptable bounds for a patient who had an LVAD placement, and further constituted a departure from the standard of care.

The Court finds that the respective experts of Plaintiffs and Defendants have provided affidavits of equal strength, supported by the facts in the record, addressing the essential allegations in the bill of particulars and setting forth their opinions with a reasonable degree of medical certainty (*see Roques v Noble,* 73 AD3d 204). Thus, although Defendants met their initial burden of establishing their prima facie case, the affidavit of Plaintiff's expert established the requisite nexus between the malpractice allegedly committed by defendants and plaintiff's injury, thereby rebutting the Defendants' prima facie showing (*Alvarez v Prospect Hosp.,* 68

805145/2014   YUSUFF, CECILIA vs. EL-ESHMAWI, AHMED M.
Motion No.  003

Page 10 of 15

10 of 15

[* 10]

NY2d at 324; *Mignoli v Oyugi,* 82 AD3d 443 [1st Dept 2011]); *Polanco v Reed,* 105 AD3d 438 [1st Dept, 2013]). "Summary judgment is not appropriate ... [when] the parties [submit] conflicting medical expert opinions because [s]uch conflicting expert opinions will raise credibility issues which can only be resolved by a jury" (*Cummings v Brooklyn Hosp. Ctr.*, 147 AD3d 902, 904 [2d Dept 2017], quoting *DiGeronimo v Fuchs,* 101 AD3d 933 [2d Dept 2012] [internal quotation marks omitted]; *see Elmes v Yelon,* 140 AD3d 1009 [2d Dept 2016]; *Leto v Feld,* 131 AD3d 590 [2d Dept 2015]).

As to the Defendant Mount Sinai Medical Center, Plaintiffs have raised issues of fact as to the medical care and treatment provided by Dr. Pinney, Dr. Anyanwu, Dr. El-Eshmawi, and Dr. Pawale, all of whom were employees of Mount Sinai Medical Center. Plaintiffs' expert opines that these Defendants were involved in pertinent decisions and treatment rendered in 2012 in selecting and approving the donor heart for the decedent. Therefore, Plaintiffs' allegations against Mount Sinai Medical Center sounding in vicarious liability cannot be dismissed. It is well-settled that a hospital or other medical facility is liable for the negligence or malpractice of its employees (*see Hill v St. Clare's Hosp.*, 67 NY2d 72 [1986]).

However, the Court notes that dismissal is warranted as to Dr. Milla since the branch of the instant motion seeking summary judgment against Dr. Milla is unopposed by Plaintiff.

The Defendants also seek dismissal of the Plaintiffs' lack of informed consent cause of action**.** A Defendant moving for summary judgment on a lack of informed consent claim must show (1) that the person providing the professional treatment failed to disclose alternatives thereto and failed to inform the patient of reasonably foreseeable risks associated with the treatment and the alternatives (2) that a reasonably prudent patient in the same position would not have undergone the treatment if he or she had been fully informed; and (3) that the lack of informed

805145/2014   YUSUFF, CECILIA vs. EL-ESHMAWI, AHMED M.
Motion No.  003

Page 11 of 15

11 of 15

consent is a proximate cause of the injury (*Koi Hou Chan Yeung*, 66 AD3d 642, 643 [2d Dept 2009]).

Here, the Defendants have established their prima facie entitlement to summary judgment on the Plaintiffs' lack of informed consent cause of action based on the expert opinions of Drs. Argenziano and Farr, the documented consent discussions in the records, including the decedent's prior consent for evaluation and transplant; consent for LVAD and transplantation; written communications in the records concerning these discussions; the testimony of Cecilia Yusuff regarding the discussion of risks and alternatives; which indicate that the decedent made an informed decision in consenting to surgery after considering the relevant risks, benefits and alternatives.

The Court finds, however, that in opposition Plaintiffs have rebutted Defendants' prima facie showing based on Plaintiffs' expert's opinion that the standard of care when obtaining informed consent prior to performing a heart transplant "is to inform the recipient as to the quality and suitability of the donor heart....", and discussing and explaining whether any defects are present which would be expected to affect the chances of a successful transplant or graft dysfunction or other complications. Plaintiffs' expert opines that the standard of care was not met here since Defendants did not inform the decedent that the proposed donor heart had defects rendering it unsuitable for transplant, and only discussed with the decedent various general risks connected with a heart transplant, including death.

Plaintiffs' claim that some of the Defendants, specifically Drs. Anyanwu and El-Eshmawi, were unqualified because they did not have American board certification must be dismissed. As opined by Drs. Argenziano and Farr, there is no requirement that a physician obtain American board certification to practice medicine in New York. The Defendants completed the relevant and

805145/2014   YUSUFF, CECILIA vs. EL-ESHMAWI, AHMED M.
Motion No.  003

Page 12 of 15

12 of 15

requisite training, passed the required testing, and were properly licensed and credentialed. In opposition, Plaintiffs' expert does not refute Defendants' experts' opinion, and thus, fails to raise a triable issue of fact warranting dismissal on this issue. The Court notes that Plaintiffs' expert likewise does not address the opinions of Defendants' experts that in the post-operative period, subsequent to implantation of the donor heart on May 9, 2012, Defendants' care and treatment of the decedent was in accord with accepted standards of care. Thus, these claims must also be dismissed (*see Stukas v Streiter*, 83 AD3d 18 [2d Dept 2011]).

Defendants' assertion that Plaintiffs' expert is unqualified to offer opinions regarding the care and treatment rendered to decedent because it is outside the expert's medical specialty is rejected. The Plaintiffs' expert's affirmation clearly states, among other things, that he/she "was in practice at Indiana University Health/Methodist Hospital, where [he/she] was actively involved in heart and lung transplant and mechanical circulatory support." The Court finds that the background, knowledge and experience of the expert, as set forth in the affirmation, indicate that the expert is qualified to render an expert opinion based on the facts of the instant case involving a heart transplant.

Based on the foregoing, it is hereby,

**ORDERED AND ADJUDGED** that the Defendants' motion seeking summary judgment pursuant to CPLR 3212 is granted to the extent of the following:

a) dismissing all claims in plaintiff's complaint against Federico Milla;

b) dismissing all claims of malpractice relating to post-operative care rendered to the decedent;

c) dismissing all claims based on lack of training and experience;

d) dismissing all claims by the Plaintiffs that the Defendant physicians were not qualified to treat decedent because they did not obtain American board certification; and it is further

805145/2014   YUSUFF, CECILIA vs. EL-ESHMAWI, AHMED M.
Motion No.  003

Page 13 of 15

13 of 15

**ORDERED AND ADJUDGED** that that the caption is amended to delete the name of Federico Milla;

**ORDERED AND ADJUDGED,** that the Clerk of the Court is directed to amend the caption to read as follows:

```
-----------------------------------------------------------------------X
CECILIA YUSUFF, As Administratrix of the
Estate of MOHAMMED FAROUK YUSUFF, and
CECILIA YUSUFF, Individually,

                 Plaintiffs,                              Index No. 805145/2014

              -against-

AHMED M. EL-ESHMAWI, AMIT AUDUMBAR PAWALE,
ANELECHI ANYANWU, SEAN PINNEY,
 MOUNT SINAI MEDICAL CENTER,
                 Defendants.

-----------------------------------------------------------------------X
```

and it is further;

**ORDERED**, that within twenty (20) days of entry of this order, counsel for plaintiff shall serve a copy of this order with notice of entry upon all parties and the Clerk of the Court (60 Centre Street, Room 141B) and the Clerk of the General Clerk's Office (60 Centre Street, Room 119), who are directed to enter judgment in accordance with this order; and it is further

**ORDERED**, that service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible a the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh).

**ORDERED,** that in all other respects Defendants' motion is denied.

This constitutes the Decision and Order of the Court.

| 9/6/2024 | | | | | | |
|---|---|---|---|---|---|---|
| **DATE** | | | | KATHY J. KING, J.S.C. | | |
| **CHECK ONE:** | ☐ | CASE DISPOSED | **X** | NON-FINAL DISPOSITION | | |
| | ☐ | GRANTED | ☐ DENIED | **X** | GRANTED IN PART | ☐ OTHER |
| **APPLICATION:** | ☐ | SETTLE ORDER | | ☐ | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | ☐ | INCLUDES TRANSFER/REASSIGN | | ☐ | FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**805145/2014   YUSUFF, CECILIA vs. EL-ESHMAWI, AHMED M.**                    **Page 15 of 15**
**Motion No.  003**