■ James Wilson, Respondent, v City of New York et al., Defendants, and John Cromwell, Appellant. [743 NYS2d 30] —Order, Supreme Court, Bronx County (Douglas McKeon, J.),

entered on or about February 16, 2001, which granted defendant Cromwell's motion to renew and reargue, and upon renewal and reargument, adhered to the order, same court and Justice, entered August 29, 2000, which denied his motion for summary judgment dismissing the causes of action as against him, unanimously reversed, on the law, and defendant's motion granted. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint as against him. Appeal from the order entered August 29, 2000, unanimously dismissed, without costs, as superseded by the appeal from the subsequent order.

The causes of action at issue on this appeal allege legal malpractice, negligence, and negligent infliction of emotional distress against defendant John Cromwell, an attorney who was assigned to defend plaintiff James Wilson in a criminal prosecution. We hold that each of the causes of action should have been dismissed on defendant's summary judgment motion.

A gunpoint robbery was committed by two men on October 18, 1998 at about 2:45 A.M. in the vicinity of 301 East 193rd Street in the Bronx. One perpetrator, Marvin Jennings, was arrested shortly after the commission of the crime. Subsequently, in a police canvass of the area, Wilson, a 33-year-old mentally disabled man with no criminal record, was found asleep beneath Metro North Railroad's Fordham Road station along with two other homeless men, and was taken into custody. Although none of the five robbery victims made a positive identification of Wilson, and indeed, three of the five victims affirmatively stated that Wilson was not a perpetrator, Wilson was charged with robbery in the first degree. At Wilson's Criminal Court arraignment defendant Cromwell was assigned to represent him.

It is further asserted that Marvin Jennings, Wilson's codefendant in the underlying criminal case, informed the Legal Aid attorney assigned to represent him that Wilson was not involved in the robbery, and that Jennings' attorney promptly informed Cromwell of his client's statement.

On November 12, 1998, Wilson entered a guilty plea to attempted robbery in the second degree, allegedly on the advice of his attorney. He was sentenced on December 1, 1998 to a term of two years imprisonment, followed by 1½ years of postrelease supervision. On February 26, 1999, upon the People's motion, the conviction was vacated and the charge dismissed, after Wilson had served approximately four months in jail.

Wilson's claims against Cromwell are based on the asser-

tions that Cromwell never requested a review of the initial bail determination; never advised Wilson prior to sentencing that codefendant Jennings had proclaimed his (Wilson's) innocence; never informed him that Jennings would cooperate to exonerate him; never informed him that the victims had failed to identify him; and counseled him to plead guilty. Wilson asserts that as a consequence of defendant's malpractice, following his guilty plea he was incarcerated, where he was assaulted by an inmate, causing him to fear "for [his] life and safety."

At the outset, we note that Wilson's initial protestations against treating defendant's motion as one for summary judgment were not properly supported. Notably, CPLR 3211 (c) permits such treatment, even without joinder of issue, upon proper notice and the submission of evidentiary materials. In any event, on appeal, no error is ascribed to the court's treatment of the motion as one for summary judgment at defendant's request, and Wilson does not suggest that he lacked access to any evidentiary materials needed to oppose summary judgment. Consequently, we turn to consideration of whether the evidence submitted established Cromwell's right to summary judgment dismissing the case.

## Legal Malpractice—Damages

The initial issue raised is the applicability of the rule that "[a] cause of action for legal malpractice *does not afford recovery for any item of damages other than pecuniary loss*" (*see*, *Wolkstein v Morgenstern*, 275 AD2d 635, 637 [emphasis added]). Since pecuniary damages "compensate the victim for the economic consequences of the injury, such as medical expenses [and] lost earnings" while the definition of nonpecuniary damages is "those damages awarded to compensate an injured person for the physical and emotional consequences of the injury" (*McDougald v Garber*, 73 NY2d 246, 251), the injuries of which Wilson complains are solely nonpecuniary in nature.

Wilson contends that the rule *Wolkstein* applied in the civil malpractice context should not be applied to criminal defendants whose attorneys commit malpractice, because the primary harm caused by attorney malpractice in criminal cases, typically an unwarranted extended loss of liberty, is necessarily nonpecuniary in nature. Therefore, he reasons, limiting damages to those pecuniary in nature would preclude any real right to relief for most victims of criminal malpractice.

This Court's holding in *Wolkstein v Morgenstern (supra)*, limiting victims of legal malpractice to pecuniary damages, although issued in the context of a claim of legal malpractice in a

civil action, amounts to a policy-based ruling not limited to that context. The nonpecuniary compensatory damages precluded in *Wolkstein* constituted an important aspect of the plaintiff's claims there: she had been unnecessarily evicted from her home as a result of the alleged malpractice of her attorney, resulting, understandably, in alleged emotional and psychological injury as well as some pecuniary damage. Thus, the determination that the nonpecuniary damages must be dismissed is as applicable in the instant matter as it was in *Wolkstein*.

Accordingly, we conclude that the *Wolkstein* ruling bars Wilson's claim for legal malpractice.

However, in any event, we would dismiss the malpractice claim for failure to establish "but for" or proximate causation.

## Legal Malpractice—Causation

To establish a cause of action for legal malpractice, the plaintiff must show (1) that the attorney was negligent in failing to exercise that degree of care, skill and diligence commonly exercised by an ordinary member of the legal community; (2) that but for the attorney's negligence, plaintiff would have prevailed in the underlying action; and (3) that actual damages were sustained as a direct result of the attorney's actions (*see, e.g., Davis & Davis v Morson*, 286 AD2d 584).

Inasmuch as Cromwell's initial submissions, considered alone, demonstrate an absence of negligence on his part, we turn to Wilson's evidence to determine whether it creates material issues of fact precluding summary judgment.

Although Wilson's submissions arguably suffice to create questions of fact as to whether Cromwell's representation of Wilson comported with the requisite "degree of care, skill and diligence," Wilson's showing is insufficient to demonstrate "but for" causation. In this context, to show that "a proper 'defense would have altered the result of the prior action'" (*Carmel v Lunney*, 70 NY2d 169, 173 [citation omitted]), Wilson must demonstrate that he would have been either exonerated or released earlier, and therefore not subjected to attack by a fellow inmate, had Cromwell not represented him in a negligent manner.

Wilson's submissions fail to establish that Cromwell could have obtained his exoneration or release earlier.

First of all, Wilson is unable to show that he would have been released earlier but for counsel's failure to make a further bail application. Cromwell establishes that Wilson was already

in custody at the time Cromwell was assigned as defense counsel, and there is no basis upon which to conclude that Cromwell had any ability to alter the normal course of postarrest events, by which bail would be set and Wilson would either be released on bail or incarcerated pending trial. It is undisputed that Wilson was unable to satisfy the set bail conditions, nor is it even claimed that Wilson would have been able to satisfy *any* bail conditions.

The mere failure to make an application to seek review of the initial bail determination does not demonstrate that such relief would have been granted had Cromwell made such an application. Nothing in Wilson's showing tends to establish that Wilson, a homeless man with no resources from which to post bail, could have obtained his release on bail had Cromwell obtained a reduction in the set bail, nor is there any basis to infer that Wilson would have been released on his own recognizance while the robbery charge remained pending against him.

Therefore, Cromwell's purported failure to make an application to reduce bail could have had no causative impact, since in any event Wilson would have remained in the custody of the Department of Correction until trial or dismissal of the charges.

Nor has Wilson presented evidence tending to show that Cromwell could have obtained Wilson's earlier release by making some other form of application based upon codefendant Jennings's reported assertion as to Wilson's innocence. The affidavit of counsel for codefendant Jennings, submitted by Wilson, indicates that the prosecutor was made aware of codefendant Jennings's assertion regarding Wilson's innocence *in the context of Jennings's plea negotiations,* and that it was Jennings's cooperation, *following his indictment,* that influenced the District Attorney's office to ultimately move to dismiss the charges. This evidence fails to demonstrate that Cromwell had any power to hasten Wilson's release. Indeed, it tends to establish the contrary, since it shows that the dismissal was based upon evidence which could only be obtained from Jennings voluntarily, provided by Jennings in a time frame related to the resolution of his own case, circumstances over which Cromwell could have had no control.

Nor may Wilson rely on the assertion that but for his conviction following his purportedly misguided guilty plea, the prosecutor would have considered the exonerating evidence sooner and arranged his release sooner. First, the evidence on this point consists solely of a vague hearsay statement from unidentified persons in the District Attorney's office who are

said to have "resisted" Wilson's claim "because James Wilson had already pled guilty to robbery and the criminal case against him was considered closed." Yet, contrary to this claimed "resistance," the exonerating evidence was, in fact, considered by the District Attorney's office *after* Wilson's conviction.

Accordingly, nothing in Wilson's showing contradicts Cromwell's showing that, pursuant to the usual procedure, even in the absence of a guilty plea, Wilson would have remained in the custody of the New York City Department of Correction awaiting trial in any event.

Nor will this Court countenance Wilson's implicit suggestion that causation is demonstrated because, due to his guilty plea, he was incarcerated in an upstate State correctional facility rather than a local jail or holding facility awaiting trial. In either event he was in a correctional facility, and his injury will not be attributed to whether such facility belonged to the State Department of Correctional Services or the City Department of Correction. Finally, the unsupported hearsay assertion that Wilson's release was delayed three weeks because he was in an upstate correctional facility rather than a New York City facility is insufficient to create a question of fact as to whether Wilson would have avoided the claimed injuries were it not for Cromwell's allegedly negligent counsel.

Accordingly, Cromwell is entitled to dismissal of Wilson's malpractice claim. The negligence claim, which is in no respect distinct from the malpractice claim, must be dismissed as well.

Negligent Infliction of Emotional Distress

It has repeatedly been held that this cause of action may only proceed where the allegations of conduct are "so extreme in degree and outrageous in character as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community" (*Wolkstein v Morgenstern, supra* at 636-637, quoting *Hernandez v City of New York*, 255 AD2d 202, 202, quoting *Naturman v Crain Communications*, 216 AD2d 150, 150). The assertions made here, accepted as true, simply do not amount to conduct rising to this level, and accordingly this cause of action must be dismissed as well. Concur—Williams, P.J., Tom, Saxe, Rosenberger and Wallach, JJ.