■ ANN STAUBER, Appellant, v NEW YORK CITY TRANSIT AUTHORITY et al., Respondents. [781 NYS2d 26]—

Order, Supreme Court, New York County (Robert Lippmann, J.), entered August 29, 2002, which granted defendants' motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

Plaintiff suffers from a disease that limits her ability to walk to short distances only, and then only with the help of two canes;

for any longer distance, she relies on a motorized wheelchair. In this action, plaintiff sues defendants on various theories for emotional distress she has allegedly suffered as a result of the malfunction of the wheelchair lift on an M-4 bus (operated by defendant Manhattan and Bronx Surface Transit Operating Authority [MABSTOA], a subsidiary of defendant New York City Transit Authority [NYCTA]) and the events that ensued during approximately the following half hour. Plaintiff does not allege that she suffered any substantial physical injury as a result of the events in question.

In brief, plaintiff alleges that, when the bus reached her stop, the wheelchair lift failed to complete its descent, whereupon defendant bus driver (Hunt) took the bus out of service and called for assistance. At plaintiff's request, Hunt enabled her to exit the bus, using her canes, by way of the front-door steps. When plaintiff reached the sidewalk, however, Hunt refused plaintiff's requests that he either remove her wheelchair from the bus, or else permit other people to do so on her behalf. Instead, Hunt called the transit command center three times to confirm that transit employees authorized to remove the wheelchair from the bus were on their way. Hunt, who was responsible for the prevention of injuries to persons and property on the bus, was instructed not to remove the wheelchair from the bus himself, nor to permit others to do so, but to wait for the arrival of transit personnel authorized to address the situation. At some point, plaintiff, who was unable to support herself on her canes throughout the wait, "slumped" to the ground and lay down on the sidewalk. Finally, about a half hour after the lift malfunction, and before the transit employees arrived to remove the wheelchair, two bystanders boarded the bus without Hunt's permission and removed the wheelchair for plaintiff. At that point, plaintiff got in the wheelchair and went on her way, refusing assistance offered by an ambulance that had arrived at the scene.

Even accepting plaintiff's version of the facts as true, the IAS court correctly granted defendants summary judgment dismissing the complaint in its entirety. Although plaintiff alleges that Hunt was rude to her, and frequently used profanity, such alleged conduct, objectionable as it may be, does not meet the "extreme and outrageous conduct" standard for the imposition of liability for infliction of emotional distress, whether intentionally (*Howell v New York Post Co.*, 81 NY2d 115, 121 [1993]) or negligently (*Wilson v City of New York*, 294 AD2d 290, 295 [2002]). Further, since plaintiff fails to allege any substantial injury other than emotional distress, all of her theories of

negligence—including, among others, negligent hiring, training and supervision of Hunt by MABSTOA and NYCTA, and negligent failure to provide her with aid and assistance after she left the bus—reduce to a claim for negligent infliction of emotional distress (again, the only injury plaintiff claims), and must fail for failure to satisfy the aforementioned element of extreme and outrageous conduct. We also note that the uncontroverted fact that Hunt was adhering to his employer's established policy in refusing to retrieve the wheelchair, or to permit others to retrieve it, precludes any finding that the purpose of his acts was to inflict emotional distress on plaintiff.

The cause of action for false imprisonment was correctly dismissed because plaintiff failed to raise a triable issue of fact as to Hunt's intent to imprison her (see Arrington v Liz Claiborne, Inc., 260 AD2d 267 [1999]). There is no dispute that Hunt called the dispatcher three times over a 30-minute period for a crew to fix the lift. Clearly, the purpose of those calls was to have the chair returned to plaintiff so Hunt could get on with his route, thus refuting the allegation that plaintiff's confinement at the bus stop without her chair was artificially prolonged. Additionally, plaintiff's failure to detail her special damages was fatal to her cause of action for prima facie tort (see Freihofer v Hearst Corp., 65 NY2d 135, 143 [1985]; Weinstein-Korn-Miller, NY Civ Prac ¶ 3015.17).

Finally, plaintiff has failed to raise any issue of fact as to a possible violation of the Americans with Disabilities Act (ADA) (42 USC § 12131 et seq.). The ADA and its implementing regulations "do not contemplate perfect service for wheelchair-using bus commuters" (Midgett v Tri-County Metro. Transp. Dist. of Or., 254 F3d 846, 849-850 [2001]), and plaintiff alleges only an isolated instance of a lift malfunction. Plaintiff's claim that the refusal to allow passersby to retrieve the wheelchair for her was discriminatory is unavailing, since there is no evidence that MABSTOA or NYCTA generally permit nonpassengers to enter an empty and out-of-service bus to retrieve a heavy object belonging to someone else. Moreover, Hunt's uncontroverted testimony established that it is against company policy for a bus driver to help any passenger, whether disabled or not, remove a heavy object from the bus. Insofar as plaintiff asserts that she was the victim of retaliation or coercion in violation of the ADA (see 42 USC § 12203), that claim finds no evidentiary support in this record. Concur—Nardelli, J.P., Tom, Andrias and Friedman, JJ.