**Miranda v New York-Presbyterian Hosp.**

2025 NY Slip Op 32800(U)

August 15, 2025

Supreme Court, New York County

Docket Number: Index No. 155964/2019

Judge: John J. Kelley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:**  **HON. JOHN J. KELLEY**

*Justice*

-----------------------------------------------------------------------------------X

EVAN MIRANDA,

                                        Plaintiff,

                        - v -

NEW YORK-PRESBYTERIAN HOSPITAL, also known as
THE NEW YORK AND PRESBYTERIAN HOSPITAL, NEW
YORK PRESBYTERIAN HEALTHCARE SYSTEM, INC.,
NEW YORK-PRESBYTERIAN/WEILL CORNELL MEDICAL
CENTER, WEILL CORNELL MEDICINE, also known as
JOAN & SANFORD I. WEILL MEDICAL COLLEGE OF
CORNELL, ANTHONY E. ROSEN, M.D., DIANE FRANCES
ZISA, M.D., NICOLE LORDAN, STEPHEN WHITE, and
RAKHMAT AKBAROV,

                                        Defendants.

-----------------------------------------------------------------------------------X

| | |
|---|---|
| **PART** | **56M** |
| **INDEX NO.** | 155964/2019 |
| **MOTION DATE** | 07/23/2025 |
| **MOTION SEQ. NO.** | 002 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 131, 132, 133, 134,
135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 150, 151, 153, 154, 155, 156, 157, 158,
159, 160, 161, 162, 163, 164, 165, 166

were read on this motion to/for            SUMMARY JUDGMENT (AFTER JOINDER)            .

In this action to recover damages for medical malpractice based on alleged departures
from good practice, assault, battery, false imprisonment, negligent infliction of emotional
distress, intentional infliction of emotional distress, common-law negligence, gross negligence,
defamation, and conversion, the defendants move for summary judgment dismissing the second
amended complaint. The plaintiff opposes the motion. The motion is granted only to the extent
that the defendants are awarded summary judgment dismissing the causes of action alleging
negligent infliction of emotional distress, intentional infliction of emotional distress, common-law
negligence, and gross negligence. The motion is otherwise denied, as the defendants failed to
demonstrate their prima facie entitlement to judgment as a matter of law as to the medical
malpractice, assault, battery, false imprisonment, defamation, and conversion causes of action.

[* 1]

The plaintiff alleged, in his second amended complaint, which he personally verified, that, on May 26, 2019, his then 84-year-old mother was transported from Mary Manning Walsh Nursing Rehabilitation Center (MMWRC) to the defendant New York-Presbyterian/Weill Cornell Medical Center (WCMC) because she had fallen, sustained a fractured hip, and needed surgery. He asserted that, during most of his mother's stay at WCMC between May 26, 2019 and May 30, 2019, he remained at her bedside. The plaintiff further averred that, on May 30, 2019, his mother was discharged from WCMC because her Medicare coverage had reached its limit. He asserted that she was returned to MMWRC, but that, either late in the evening of May 30, 2019, or early in the morning of May 31, 2019, she was left unattended at MMWRC, again fell, reinjured herself, and was transported by ambulance back to WCMC, where he alleged that he and his partner, Jill Bianchini, met her in her hospital room, which was located in WCMC's emergency department. The plaintiff averred that, on the morning of May 31, 2019, while still in his mother's room, private security guards at WCMC physically restrained him and refused to permit him to leave, thus assaulting and battering him, and that medical staff at that hospital "subject[ed] him to unwanted, unwarranted and invasive medical treatment against his will and without his consent." He further contended that a security guard made defamatory statements about him by falsely accusing him of criminally trespassing on WCMC property, being intoxicated, and possessing illicit drugs. The plaintiff also asserted that WCMC employees converted his personal property by seizing it and not returning it to him.

In that pleading, the plaintiff specifically alleged that, during the time that he was in his mother's room, either late in the evening of May 30, 2019, or early in the morning of May 31, 2019, at which time he was 53 years old, he was experiencing severe pain from sciatica, had taken prescription-strength Aleve to treat that pain, and followed a nurse's instruction that, instead of lying down on the floor, he instead lie in an empty stretcher next to his mother's bed, where he fell asleep. He asserted that he was awoken later in the morning of May 31, 2019 by the defendant security guards Stephen White and Rakhmat Akbarov (together the security

155964/2019   MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN
Motion No.  002

Page 2 of 20

2 of 20

[* 2]

defendants), who "began peppering [him] with hostile questions, accusing him of trespassing and being drunk," and that, by that time, unbeknownst to him, his mother had been moved to another room in the hospital. The plaintiff averred that the security defendants interrogated him for several minutes, also accusing him of lying. He asserted that, in response, he "protested and explained to them that he was authorized to be at the Hospital in general and in that room specifically, and that he was merely taking a nap as one of the Hospital's nurses had suggested," but that neither of them, nor any other hospital personnel, attempted to confirm that his mother had been in that room, and he further explained that he was simply visiting her when he fell asleep. Specifically, the plaintiff contended that the security defendants

> "forced [him] out of the room where his mother had been, into a hallway area and then to a waiting area, where they continued to badger, harass, and interrogate him, as well as physically detain him against his will. [He] again explained that he had been in the Hospital for days and provided [them with the name of] the wing of the Hospital (8 North) where he and his mother had been previously. He suggested that the guards call the nurses in that wing because they would know him, but the guards refused and continued to physically detain him."

He also asserted that, although he described the nurse who had given him permission to lie down and sleep in the stretcher, her shift had ended, that the security defendants continued to accuse him of lying, and that they compelled him to remove his driver's license, keys, and prescription medication from his pockets, all of which they seized. He stated that, at that juncture, the security defendants falsely accused him of possessing illegal drugs, and informed other hospital personnel that they "got him," in response to which the plaintiff, who believed that the security defendants may actually have been police officers, asked them what crimes they were charging him with. The plaintiff averred that, when he told the security defendants that the medication was prescription naproxen sodium, that is, Aleve, they refused to believe him.

As the plaintiff further alleged, although the security defendants first permitted him to leave after detaining him for approximately 30 minutes, as he started to walk away, White demanded that he return. He asserted that, between 8:00 a.m. and 9:00 a.m. on May 31, 2019, various members of WCMC medical staff and its security department converged in and around

**155964/2019 MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN**
**Motion No. 002**

Page 3 of 20

3 of 20

[* 3]

the emergency department, including the security defendants, as well as the defendant physicians Anthony E. Rosen, M.D., and Diane Frances Zisa, M.D., and the defendant nurse Nicole Lordan (collectively the medical defendants), the latter of whom informed the plaintiff that they were going to draw his blood for testing. According to the plaintiff, he objected and demanded to know why, to which Lordan responded that "we have to because we think you're drunk," to which he replied that he was neither drunk nor intoxicated. He alleged that he was then admitted to WCMC against his will, with a diagnosis of "ethanol abuse." The plaintiff further contended that, in his own WCMC chart, the "History of Present Illness" and "Assessment and Plan" reported, without justification, that he was experiencing "acute alcohol intoxication," but that, when his blood was drawn and tested against his will, the same chart reported that he was not, in fact, intoxicated, and that his alcohol blood level was zero percent. He stated that, despite his repeated explanations that he was visiting his mother, and that he was granted permission to lie in the stretcher, the chart included the following entries:

> "Triage Information Nurse Lordan, Nicole saw MIRANDA, EVAN at 05/31/19 08:48.

> "Triage Comments: Pt found sleeping in hospital stretcher without ID bracelet, unable to provide reason why he was here, who he was with

> \*\*\*\*\*

> "Evaluation while in ED [Emergency Department] patient was able to tell a consistent story admitted to being here with his mother, Evelyn Perez, in C bay; was told he could lay down on the stretcher because of his sciatica pain, and then someone else came in and woke him up and told him he couldn't stay there. says [sic] he was 'forced here against his will.'

> \*\*\*\*\*

> "History of Present Illness: 53M . . . . EtoH (ethanol) abuse presenting confused after being found in C bay claiming he was with a patient although no one able to corroborate. Was found sleeping in hospital stretcher, unable to say why. Patient is distraught and hysterically crying throughout interview – says he is here all the time with his mother – 'Evelyn Perez' – and that he was here after trying to bring her to MMW which she hated. She was getting a CT scan and is somewhere else in the Hospital. Says everyone on the 8th Floor knows him. Is confused as to why we're doing any of this, says he's fine."

**155964/2019   MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN**   **Page 4 of 20**
**Motion No.  002**

4 of 20

The plaintiff asserted that he had, in fact, explained to WCMC staff why he was in the stretcher, that he did not present as "confused," and had no present illness, let alone ethanol abuse.

The plaintiff reiterated that, despite the fact that he was not suffering from any condition that required immediate medical attention, he was admitted as an inpatient to WCMC against his will. He conceded that he was crying during the course of these events, and that it was reasonable for him to do so because he was extremely upset in light of being physically roused from a deep sleep following days without sufficient sleep, by virtue of his constant worries about his mother, due to security and medical personnel's refusal to corroborate the veracity of his explanations or to locate his mother, and because he was falsely accused of trespassing, being drunk, and abusing illicit drugs. He further asserted that, immediately following his involuntary admission, security and medical personnel physically intimidated him, and placed him in a separate room, where he was told that he had to undergo a computed tomography (CT) scan, upon which he protested and informed those personnel that he did not consent or agree to undergo such a scan. As the plaintiff described it, he nonetheless a blood sample was focibly drawn via a needle for testing, and he was forced into a CT scan machine, where he was unnecessarily exposed to ionizing radiation against his will, which "substantially exacerbated" his "already monumental terror, and emotional and psychological trauma." He explained that, although the results of the CT scan of his head were reported to be "unremarkable," he nonetheless was subjected to additional medical testing to which he did not consent, including an electrocardiogram (EKG), for which he was forced to disrobe.

The second amended complaint further asserted that, when the plaintiff tried to reclaim his clothing after the EKG, he was told by a nurse that he could not do so, and that he could not leave the hospital. The plaintiff averred that additional security personnel, including a supervisor, came to the room where he was being detained, and that, although he attempted to explain his situation, and was permitted to call his partner, Bianchini, he was detained against his will for an additional, substantial period of time. He stated that Rosen ultimately arrived,

155964/2019   MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN                     Page 5 of 20
Motion No.  002

5 of 20

identifying himself as the "Head of Emergency," and that, shortly thereafter, Bianchini and a friend of hers arrived as well, at which time Rosen told him that his detention and all of the medical testing to which he did not consent was "for his own good." The plaintiff also alleged that, after he refused to sign the discharge papers that hospital staff had prepared for him, he was told that the blood alcohol testing revealed that his blood alcohol level was zero percent. He asserted that he was finally permitted to go to see his mother in the room to which she had been transferred while he had been asleep early that morning.

The plaintiff alleged that, as a consequence of his experience, he has become extremely emotionally distraught and traumatized, and is now under the treatment of a therapist who, based upon observations of readily apparent symptoms of mental disorders, has expressed serious concerns about the impact that incident had and will continue to have on his mental and emotional health, including concern for post-traumatic stress disorder. He asserted that his "body was violated against his will and without his consent when he was subjected to invasive and non-consensual medical procedures by which Hospital personnel literally entered his body and brain, pierced his skin, and subjected him to intense pain, as well as radiation that has unknown long-term health effects." He claimed a violation of his dignity and asserted that he was subjected to false accusations of trespassing and substance abuse. He also claimed that WCMC has yet to return his keys and prescription medication, despite demands therefor. In addition, the plaintiff averred that, on June 14, 2019, the institutional defendants invoiced him in the sum of $6,295.82 for the alleged "treatment" and testing rendered on May 31, 2019.

The plaintiff asserted causes of action sounding in medical malpractice, assault, battery, false imprisonment, negligent infliction of emotional distress, intentional infliction of emotional distress, common-law negligence, gross negligence, and conversion against all of the defendants, and a cause of action sounding in defamation against White. In his bill of particulars, he essentially reiterated the allegations set forth in detail in his second amended complaint in greater detail, and alleged that, in addition to the physical and emotional injuries set

155964/2019   MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN                     Page 6 of 20
Motion No.  002

6 of 20

forth therein, he also was caused to expend money for psychotherapy, and sustained a loss of earnings in his profession as an actor and screenwriter for films, theater, and television.

It is well settled that the movant on a summary judgment motion "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985] [citations omitted]).  The motion must be supported by evidence in admissible form (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]), as well as the pleadings and other proof such as affidavits, depositions, and written admissions (*see* CPLR 3212).  The facts must be viewed in the light most favorable to the non-moving party (*see Flanders v Goodfellow*, _____NY3d_____, 2025 NY Slip Op 02261, *1 [Apr. 17, 2025]; *Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012]).  In other words, "[i]n determining whether summary judgment is appropriate, the motion court should draw all reasonable inferences in favor of the nonmoving party and should not pass on issues of credibility" (*Garcia v J.C. Duggan, Inc.*, 180 AD2d 579, 580 [1st Dept 1992]; *see Haymon v Pettit*, 9 NY3d 324, 327 n [2007]).  Once the movant meets that burden, it is incumbent upon the non-moving party to establish the existence of material issues of fact (*see Vega v Restani Constr. Corp.*, 18 NY3d at 503).  A movant's failure to make a prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers (*see id.; Medina v Fischer Mills Condo Assn.*, 181 AD3d 448, 449 [1st Dept 2020]).

"The drastic remedy of summary judgment, which deprives a party of his [or her] day in court, should not be granted where there is any doubt as to the existence of triable issues or the issue is even 'arguable'" (*De Paris v Women's Natl. Republican Club, Inc.,* 148 AD3d 401, 403-404 [1st Dept 2017]; *see Bronx-Lebanon Hosp. Ctr. v Mount Eden Ctr.*, 161 AD2d 480, 480 [1st Dept 1990]).  Thus, a moving defendant does not meet the burden of affirmatively establishing entitlement to judgment as a matter of law merely by pointing to gaps in the plaintiff's case, but must affirmatively demonstrate the merit of his or her defense (*see Koulermos v A.O. Smith*

*Water Prods*., 137 AD3d 575, 576 [1st Dept 2016]; *Katz v United Synagogue of Conservative Judaism*, 135 AD3d 458, 462 [1st Dept 2016]). Moreover, where a party's submission itself reveals the existence of a triable issue of fact, that party is deemed to have failed to establish its prima facie entitlement to judgment as a matter of law (*see Reading v Fabiano,* 137 AD3d 1686, 1687 [4th Dept 2016]; *Kimber Mfg., Inc. v Hanzus*, 56 AD3d 615, 617 [2d Dept 2008]). The court notes that a complaint or bill of particulars verified by a party may be employed as proof of the facts constituting the claim (*see* CPLR 105[u]), and constitutes admissible evidence, where, as here, it sets forth sufficient, detailed evidentiary facts, rather than mere conclusions (*see Sanchez v National R.R. Passenger Corp.*, 21 NY3d 890, 891 [2013]; *Travis v Allstate Ins. Co*., 280 AD2d 394, 394-395 [1st Dept 2001]; *Celnick v Freitag*, 242 AD2d 436, 437 [1st Dept 1997]).

"To sustain a cause of action for medical malpractice, a plaintiff must prove two essential elements: (1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of plaintiff's injury" (*Frye v Montefiore Med. Ctr*., 70 AD3d 15, 24 [1st Dept 2009]; *see Foster-Sturrup v Long,* 95 AD3d 726, 727 [1st Dept 2012]; *Roques v Noble*, 73 AD3d 204, 206 [1st Dept 2010]; *Elias v Bash*, 54 AD3d 354, 357 [2d Dept 2008]; *DeFilippo v New York Downtown Hosp*., 10 AD3d 521, 522 [1st Dept 2004]).

To make a prima facie showing of entitlement to judgment as a matter of law, a defendant physician moving for summary judgment must establish the absence of a triable issue of fact as to his or her alleged departure from accepted standards of medical practice (*Alvarez v Prospect Hosp*., 68 NY2d 320, 324 [1986]; *Barry v Lee*, 180 AD3d 103, 107 [1st Dept 2019]; *Frye v Montefiore Med. Ctr*., 70 AD3d at 24) or establish that the plaintiff was not injured by such treatment (*see Pullman v Silverman,* 28 NY3d 1060, 1063 [2016]; *McGuigan v Centereach Mgt. Group, Inc*., 94 AD3d 955 [2d Dept 2012]; *Sharp v Weber*, 77 AD3d 812 [2d Dept 2010]; *see generally Stukas v Streiter*, 83 AD3d 18 [2d Dept 2011]). To satisfy this burden, a defendant must present expert opinion testimony that is supported by the facts in the record, addresses the essential allegations in the complaint or the bill of particulars, and is

**155964/2019   MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN**
**Motion No.  002**

Page 8 of 20

[* 8]

detailed, specific, and factual in nature (*see Roques v Noble*, 73 AD3d at 206; *Joyner-Pack v Sykes*, 54 AD3d 727, 729 [2d Dept 2008]; *Koi Hou Chan v Yeung*, 66 AD3d 642 [2d Dept 2009]; *Jones v Ricciardelli*, 40 AD3d 935 [2d Dept 2007]).  If the expert's opinion is not based on facts in the record, the facts must be personally known to the expert and, in any event, the opinion of a defendant's expert should specify "in what way" the patient's treatment was proper and "elucidate the standard of care" (*Ocasio-Gary v Lawrence Hospital,* 69 AD3d 403, 404 [1st Dept 2010]).  Stated another way, the defendant's expert's opinion must "explain 'what defendant did and why'" (*id.*, quoting *Wasserman v Carella*, 307 AD2d 225, 226 [1st Dept 2003]).  Moreover, as noted, to satisfy his or her burden on a motion for summary judgment, a defendant must address and rebut specific allegations of malpractice set forth in the plaintiff's bill of particulars (*see Wall v Flushing Hosp. Med. Ctr.*, 78 AD3d 1043 [2d Dept 2010]; *Grant v Hudson Val. Hosp. Ctr.*, 55 AD3d 874 [2d Dept 2008]; *Terranova v Finklea*, 45 AD3d 572 [2d Dept 2007]).

Once satisfied by the defendant, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact by submitting an expert's affidavit or affirmation attesting to a departure from accepted medical practice and/or opining that the defendant's acts or omissions were a competent producing cause of the plaintiff's injuries (*see Roques v Noble*, 73 AD3d at 207; *Landry v Jakubowitz*, 68 AD3d 728 [2d Dept 2009]; *Luu v Paskowski*, 57 AD3d 856 [2d Dept 2008]).  Thus, to defeat a defendant's prima facie showing of entitlement to judgment as a matter of law, a plaintiff must produce expert testimony regarding specific acts of malpractice, and not just testimony that contains "[g]eneral allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice" (*Alvarez v Prospect Hosp.,* 68 NY2d at 325 [emphasis added]; *see also Pancila v Romanzi,* 140 AD3d 516, 516 [1st Dept 2016]; *Callistro ex rel. Rivera v Bebbington*, 94 AD3d 408, 410 [1st Dept 2012], *affd sub nom. Callistro v Bebbington*, 20 NY3d 945 [2012]; *Frye v Montefiore Med. Ctr.*, 70 AD3d at 24).  In most instances, the opinion of a qualified expert that the plaintiff's injuries resulted from a deviation from relevant industry or medical standards

155964/2019   MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN
Motion No.  002

Page 9 of 20

9 of 20

[* 9]

is sufficient to preclude an award of summary judgment in a defendant's favor (*see Murphy v Conner*, 84 NY2d 969, 972 [1994]; *Frye v Montefiore Med. Ctr.*, 70 AD3d at 24). There are, however, exceptions to this requirement, such as where the matters alleged are within the ordinary experience and knowledge of a lay person (*see Fiore v Galang*, 64 NY2d 999, 1000-1001 [1985]; *Canter v Mulnick*, 60 NY2d 689, 691 [1983]; *Nutting v Associates in Obstetrics & Gynecology, P.C.*, 130 AD2d 870, 871 [3d Dept 1987]; *Jenkins v Mazlin*, 2022 NY Slip Op 33518[U], *5, 2022 NY Misc LEXIS 10393, *7-8 [Sup Ct, N.Y. County, Oct. 3, 2022] [Kelley, J.] [applying rule to proof required on motion for leave to enter default judgment]). A case involving a physician who performs an invasive procedure on a patient, despite the patient's emphatic refusal to consent thereto, sounds both in medical malpractice and assault and battery (*see Oates v New York Hosp.*, 131 AD2d 368, 369 [1st Dept 1987]), and the court concludes that the plaintiff was not required to submit an expert affirmation in connection with that claim, even though he did so here.[1]

To sustain a cause of action to recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact (*see Timothy Mc. v Beacon City Sch. Dist.*, 127 AD3d 826, 829 [2d Dept 2015]; *Gabriel v Scheriff*, 115 AD3d 791, 792 [2d Dept 2014]). The elements of a cause of action to recover damages for battery are intentional bodily contact that is offensive in nature (*see Timothy Mc. v Beacon City Sch. Dist.*, 127 AD3d at 829; *Cerilli v Kezis*, 16 AD3d 363, 364 [2d Dept 2005]). A doctor who threatens to perform, and thereafter actually performs, a medical or diagnostic procedure on a patient without any consent, in the absence of an emergency, is liable for assault and battery (*see VanBrocklen v Erie County Med. Ctr.*, 96 AD3d 1394, 1394-1395 [4th Dept 2012]; *Cerilli v*

---

[1] The court notes that, if the plaintiff prevails on his medical malpractice cause of action at trial, and he has paid the invoice that the institutional defendants sent to him, one of items of damage that he may recover is the amount of that payment (*see generally Knight v Long Island Coll. Hosp.*, 106 AD3d 371, 373 [2d Dept 1984] [affirming jury's finding of liability with respect to paid hospital bill, but setting aside award as excessive]).

155964/2019 MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN
Motion No. 002

Page 10 of 20

*Kezis*, 16 AD3d at 363-364; *Laskowitz v CIBA Vision Corp*., 215 AD2d 25, 28 [2d Dept 1995]; *Rigie v Goldman*, 148 AD2d 23, 28 [2d Dept 1989]; *Oates v New York Hosp*., 131 AD2d at 369). In contrast to the situation in which a patient consents to a medical procedure without being fully aware of the risks and consequences involved, a case such as this one, which involved medical personnel who performed invasive procedures on the plaintiff, despite his emphatic refusal to consent thereto, sounds both in medical malpractice and assault and battery, as explained above, and the doctrine of lack of informed consent thus is inapplicable (*see Oates v New York Hosp*., 131 AD2d at 639). Consequently, the plaintiff here was not obligated by CPLR 4401-a to submit an expert affirmation or affidavit in connection with the medical malpractice cause of action. Even if this case had presented a question of lack of informed consent, there is no dispute that the institutional and medical defendants did not obtain any consent from the plaintiff whatsoever and he, perforce, proved the qualitative insufficiency of the consent without the need for an expert affirmation (*see generally Tullo v Tartack*, 2002 NY Slip Op 40507[U] *4, 2002 NY Misc LEXIS 1640, *7-8 [Sup Ct, Kings County, Jul. 24, 2002] [no expert affirmation required where defendant failed to provide plaintiff with any information whatsoever about the benefits and risks of, and alternatives to, the subject treatment]).

By supporting their motion with the plaintiff's highly detailed verified second amended complaint, his even more detailed bills of particulars, which he also personally verified, the transcripts of the plaintiff's deposition testimony, and the relevant medical records, the defendants have submitted documentation that revealed the existence of triable issues of fact as to whether the security defendants committed an assault and battery upon the plaintiff by unwanted and offensive forcible touching, whether the institutional and medical defendants departed from accepted medical practice by performing diagnostic testing upon the plaintiff over his objections, and whether the institutional and medical defendants committed an assault and battery upon the plaintiff, inasmuch as the blood test, CT scan, and electro-cardiogram to which they subjected the plaintiff "constituted offensive or nonconsensual bodily contact 'in a

**155964/2019   MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN**
**Motion No.  002**

Page 11 of 20

11 of 20

nonexigent situation'" (*Berrios v Our Lady of Mercy Med. Ctr.*, 20 AD3d 361, 362 [1st Dept 2005], quoting *Oates v New York Hosp.*, 131 AD2d at 370; *see Messina v Matarasso*, 284 AD2d 32, 34-35 [1st Dept 2001]). Hence, the defendants failed to establish their prima facie entitlement to judgment as a matter of law in connection with the medical malpractice, assault, and battery causes of action, regardless of the sufficiency of the opposition papers.

In any event, in response to the affirmation of the defendants' expert physician, Erick A. Eiting, M.D., who opined that the medical defendants did not depart from good and accepted practice in the manner in which they dealt with the plaintiff, the plaintiff submitted the affirmation of his own expert physician, Carlos Cesar, M.D., who concluded that they "did not conform to the appropriate standard of care at all relevant times when non-consensual treatment was rendered to the Plaintiff, and that said non-consensual treatment was the proximate cause of Plaintiff's injuries." Dr. Cesar asserted that the conduct in which the medical defendants engaged "while [the plaintiff] was involuntarily placed under their care, was inappropriate and did not come close to meeting the correct standard of care," since they breached their duty of care to him by failing to verify the reasons for his presence in his mother's hospital room, failing to verify his visitor status, failing to conduct appropriate "bed rounds" upon the nursing shift change at 7:00 a.m. on March 31, 2019, and "inexplicably elect[ing] to evaluate and treat Plaintiff in the emergency department at the Hospital upon detecting his presence." Specifically, Dr. Cesar asserted that

> "[i]t is a well-known and widely accepted standard that medical staff have no right to approach and initiate an evaluation or treatment on any individual present in the Emergency Department unless the individual can be officially identified as a patient in the department's care. There are only two accepted manners in which an individual may be properly presented for treatment as a patient in an emergency department: (1) an individual will arrive by ambulance, and accordingly, will be registered as a patient by Emergency Department staff, or (2) an individual will present themselves in the emergency department, at which point the individual will encounter a greeter and/or security, and/or a triage nurse in order to be properly registered as a patient in the Emergency Department. It is only after one of the two aforementioned registration procedures occurs and the patient has an identification band, that staff and physicians may approach a patient and begin to administer medical testing and/or treatment."

**155964/2019   MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN**
**Motion No.  002**

Page 12 of 20

12 of 20

[* 12]

Thus, even had the defendants established their prima facie entitlement to judgment as a matter of law with respect to the medical malpractice cause of action, the plaintiff would have raised a triable issue of fact as to both liability and proximate cause.

Consequently, those branches of the defendants' motion seeking summary judgment dismissing the medical malpractice, assault, and battery causes of action must be denied.

"Under the common law, a plaintiff may bring suit for false arrest and imprisonment against one who has unlawfully robbed the plaintiff of his or her 'freedom from restraint of movement'" (*De Lourdes Torres v Jones*, 26 NY3d 742, 759 [2016], quoting *Broughton v State of New York*, 37 NY2d 451, 456 [1975]). To prevail on such a cause of action, the plaintiff must demonstrate that "the defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement, that the plaintiff did not consent to the confinement and that the confinement was not privileged" (*De Lourdes Torres v Jones*, 28 NY3d at 759; *see Donald v State of New York*, 17 NY3d 389, 394-395 [2011]; *Martinez v City of Schenectady*, 97 NY2d 78, 85 [2001]; *Parvi v City of Kingston*, 41 NY2d 553, 556 [1977]). The court notes that a cause of action alleging false arrest is indistinguishable from one asserting false imprisonment (*see* 59 NY Jur 2d, False Imprisonment, § 1, at 262-263; 22 Am Jur, False Imprisonment, p. 354, § 3; *Poje v Hopkins*, 298 AD2d 780, 780 n [3d Dept 2002]; *Brown v Roland*, 215 AD2d 1000, 1000 [3d Dept 1995]). Since the defendants' submissions included the verified second amended complaint, the verified bills of particulars, the parties' deposition transcripts, and the plaintiff's medical records, all of which constitute evidence in admissible form, those submissions revealed the existence of triable issues of fact as to whether the security defendants confined the plaintiff without his consent by refusing to let him leave WCMC and confining him to particular rooms, and whether the institutional and medical defendants confined the plaintiff without his consent by admitting him to the hospital and employing the security defendants and their supervisors to assure that he did not leave. Consequently, the defendants failed to establish their prima facie

**155964/2019   MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN**
**Motion No.  002**

**Page 13 of 20**

13 of 20

entitlement to judgment as a matter of law in connection with the false imprisonment cause of action, and that branch of their motion seeking summary judgment dismissing that cause of action must be denied.

With respect to the cause of action to recover for negligent infliction of emotional distress

"[i]t is well-settled that a person 'to whom a duty of care is owed . . . may recover for harm sustained solely as a result of an initial, negligently-caused psychological trauma, but with ensuing psychic harm with residual physical manifestations' (*Johnson v State of New York,* 37 NY2d 378, 381 [1975] [citations omitted]). A breach of the duty of care 'resulting directly in emotional harm is compensable even though no physical injury occurred' (*Kennedy v McKesson Co.*, 58 NY2d 500, 504 [1983]) when the mental injury is 'a direct, rather than a consequential, result of the breach' (*id*. at 506) and when the claim possesses 'some guarantee of genuineness' (*Ferrara v Galluchio*, 5 NY2d 16, 21 [1958])"

(*Ornstein v New York City Health & Hosps. Corp.*, 10 NY3d 1, 6 [2008]). "A cause of action for negligent infliction of emotional distress generally requires [the] plaintiff to show a breach of duty owed to [him or] her which unreasonably endangered [his or] her physical safety, or caused [him or] her to fear for [his or] her own safety" (*A.M.P. v Benjamin*, 201 AD3d 50, 57 [2d Dept 2021] [citations and internal quotation marks omitted]; *see Schultes v Kane*, 50 AD3d 1277, 1278 [3d Dept 2008]). Although a cause of action sounding in negligent infliction of emotional distress does not require proof of extreme and outrageous conduct (*see Brown v New York Design Ctr., Inc.,* 215 AD3d 1, 7 [1st Dept 2023]; *Doe v Langer*, 206 AD3d 1325, 1331 [3d Dept 2022]; *Stephanie L. v House of Good Shepherd*, 186 AD3d 1009, 1014 [4th Dept 2020]; *Taggart v Costabile*, 131 AD3d 243, 255 [2d Dept 2015]), such a claim usually cannot be asserted where, as here, it is essentially duplicative of other tort causes of action (*see Aykac v City of New York,* 2022 NY Slip Op 33639[U], *16, 2022 NY Misc LEXIS 10629, *25 [Sup Ct, N.Y. County, Oct. 20, 2022] [Kelley, J.]; *C.T. v Valley Stream Union Free Sch. Dist.*, 201 F Supp 3d 307, 327-328 [ED NY 2016]). The tort of intentional infliction of emotional distress "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv)

**155964/2019 MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN**
**Motion No. 002**

**Page 14 of 20**

14 of 20

severe emotional distress" (*Howell v New York Post Co*., 81 NY2d 115, 121 [1993]).  Similarly, that cause of action must be dismissed as duplicative of other causes of action.  The claim here "fall[s] within the ambit of other traditional tort liability," specifically, the false imprisonment, assault, battery, and defamation causes of action (*Fleischer v NYP Holdings, Inc*., 104 AD3d 536, 538 [1st Dept 2013]; *see Fischer v Maloney*, 43 NY2d 553, 557-558 [1978]; *Matthaus v Hadjedj*, 148 AD3d 425, 426 [1st Dept 2017]; *Rodgers v City of New York*, 106 AD3d 1068, 1070 [2d Dept 2013]; *Leonard v Reinhardt*, 20 AD3d 510, 510 [2d Dept 2005]; *Stuart v Porcello*, 193 AD2d 311, 315 [3d Dept 1993]).  Additionally, the plaintiff does not allege any facts independent of those alleged in connection with those other claims, or allege distinct damages (*see Matthaus v Hadjedj*, 148 AD3d at 426; *Perez v Violence Intervention Program*, 116 AD3d 601, 602 [1st Dept 2014]; *Fleischer v NYP Holdings*, 104 AD3d at 538).

In any event, the cause of action sounding in intentional infliction of emotion distress requires allegations that the defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (*Sheila C. v Povich*, 11 AD3d 120, 130-131 [1st Dept 2004] [internal quotation marks omitted], citing, inter alia, *Dillon v City of New York*, 261 AD2d 34, 41 [1st Dept 1999]; *see Stauber v New York City Tr. Auth*., 10 AD3d 280, 281-282, 781 NYS2d 26 [1st Dept 2004]; *see also Brown v New York Design Ctr., Inc.,* 215 AD3d at 7-8).  In opposition to the defendants' prima facie showing that detaining the plaintiff and subjecting him to diagnostic testing did not fall within that definition, the plaintiff's evidence failed to raise a triable issue as to whether the defendants' conduct was sufficiently extreme or outrageous as to support these claims.  There is no evidence that defendants intended to inflict harm upon the plaintiff (*see Berrios v Our Lady of Mercy Med. Ctr*., 20 AD3d at 362-363 [performance of nonconsensual enema and anal probe not extreme and outrageous in the context of claim alleging intentional infliction of emotional distress]) and, although he alleged that they did, in fact, treat him in a discourteous and offensive manner (*cf. id*.), this fact, standing

**155964/2019   MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN**
**Motion No.  002**

Page 15 of 20

alone, is insufficient to raise a triable issue of fact in connection with the causes of action seeking to recover either for negligent and intentional infliction of emotional distress.

Thefore, the defendants must be awarded summary judgment dismissing the causes of action alleging negligent infliction of emotional distress and intentional infliction of emotional distress.

To establish common-law negligence, the plaintiff must prove that the defendants owed him a duty of care and breached that duty, and that the breach proximately caused his injuries (*see Solomon v City of New York*, 66 NY2d 1026, 1027 [1985]; *Wayburn v Madison Land Ltd. Partnership*, 282 AD2d 301, 302 [1st Dept 2001]). "Conduct may be deemed malpractice, rather than negligence, when it 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician'" (*Scott v Uljanov*, 74 NY2d 673, 674, 675 [1989], quoting *Bleiler v Bodnar*, 65 NY2d 65, 72 [1985]). "When the duty arises from the physician-patient relationship or is substantially related to medical treatment, the breach gives rise to an action sounding in medical malpractice, not simple negligence" (*Mendelson v Clarkstown Med. Assoc.*, 271 AD2d 584, 584, [2d Dept 2000]; *see Bleiler v Bodnar*, 65 NY2d at 72; *Morales v Carcione*, 48 AD3d 648, 649 [2d Dept 2008]; *Levinson v Health S. Manhattan*, 17 AD3d 247, 247 [1st Dept 2005]). Here, the plaintiff alleged no facts giving rise to an independent claim sounding in common-law negligence. Rather, all of his allegations constituting the claim of common-law negligence either are couched in the defendants' (a) nonconsensual and invasive diagnostic testing and their breach of applicable medical and hospital administration standards for identifying who actually is a patient subject to their involvement, which involve medical issues, or (b) alleged assault and battery, which are intentional torts inconsistent with an allegation of negligence (*see Allstate Ins. Co. v Mugavero*, 79 NY2d 153, 163 [1992]; *Sphere Drake Ins. Co. v 72 Centre Ave. Corp.*, 238 AD2d 574, 576 [2d Dept 1997]). New York does not recognize a cause of action to recover for negligent assault or battery (*see Borrerro v Haks Group, Inc.*, 165 AD3d 1216, 1217 [2d Dept 2018];

**155964/2019   MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN**
**Motion No.  002**

Page 16 of 20

16 of 20

*Johnson v City of New York*, 148 AD3d 1126, 1127 [2d Dept 2017]; *Oteri v Village of Pelham*, 100 AD3d 725, 725 [2d Dept 2012]; *Smiley v North Gen. Hosp.*, 59 AD3d 179, 180 [1st Dept 2009]).  Rather, a cause of action purporting to allege "negligent assault" is treated as a cause of action sounding solely in assault (*see Trott v Merit Dept. Store*, 106 AD2d 158, 159 [1st Dept 1985]).  In opposition to the defendants' prima facie showing in connection with the common-law negligence cause of action, the plaintiff failed to raise a triable issue of fact as to whether any of his allegations of wrongdoing were not subsumed in the medical malpractice, assault, battery, and false imprisonment causes of action.  Hence, that branch of the defendants' motion seeking summary judgment dismissing the negligence cause of action must be granted.

Gross negligence consists of "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing" (*Colnaghi, U.S.A. v Jewelers Protection Servs.*, 81 NY2d 821, 823-824 [1993]; *Ambac Assur. UK Ltd. v J.P. Morgan Inv. Mgt., Inc.*, 88 AD3d 1, 8 [1st Dept 2011]).  Gross negligence thus is "different in kind as well as degree" from ordinary negligence (*Sutton Park Dev. Corp. Trading Co. v. Guerin & Guerin Agency*, 297 AD2d 430, 431 [3d Dept 2002]; *Green v Holmes Protection of N.Y.*, 216 AD2d 178, 178-179 [1st Dept 1995]).  The element of culpability is, in gross negligence, magnified to a high degree as compared with that present in ordinary negligence (*see Sharick v Marvin,* 1 AD2d 284, 286-287 [3d Dept 1956]).  Gross negligence thus can be defined as conduct of an aggravated character that discloses a failure to exercise any diligence whatsoever (*see Civil Service Employees Assn, Inc. v Public Employment Relations Bd.*, 132 AD2d 430, 435 [3d Dept 1987]).  Conclusory allegations of gross negligence, however, are insufficient to state a cause of action or survive a motion to dismiss pursuant to CPLR 3211(a)(7) (*see Mancuso v. Rubin*, 52 AD3d 580, 583 [2d Dept 2008]; *Porter v Forest Hills Care Center, LLC*, 2018 NY Slip Op 33439[U], 2018 WL 6976728 [Sup Ct, Queens County, Nov. 28, 2018]).

Nonetheless, a cause of action alleging either common-law negligence or gross negligence is distinguishable from assault and battery by virtue of the absence of the element of

155964/2019   MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN
Motion No.  002

Page 17 of 20

17 of 20

intent, which is necessary to a claim of assault and battery (*see Jones v Kent*, 35 AD2d 622, 622 [3d Dept 1970]; *see also Flamer v City of Yonkers*, 309 NY 114, 119 [1955]). Although "the same act may constitute battery or negligence depending upon whether or not it was intentional, . . . there cannot be recovery for both" (NY PJI 3:3, Comment [2017 Update]; *see Rafferty v Ogden Mem. Hosp*., 140 AD2d 911, 912 [3d Dept 1988]; *Murray v Long Is. R. R. Co*., 35 AD2d 579, 580 [2d Dept 1970]). The allegation that the defendants' acts constituted gross negligence that directly and proximately caused the plaintiff's injuries "was totally inconsistent with the allegation that an intentional, malicious assault was committed" (*Monter v CNA Ins. Cos.,* 202 AD2d 405, 406 [2d Dept 1994]), particularly because the plaintiff alleged the identical facts in support of both theories of recovery (*see id*.). Consequently, summary judgment must be awarded to the defendants dismissing the gross negligence cause of action.

"The elements of a cause of action [to recover] for defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se" (*Gaccione v Scarpinato*, 137 AD3d 857, 859 [2d Dept 2016], quoting *Epifani v Johnson*, 65 AD3d 224, 233 [2d Dept 2009]). "To establish actionable defamation, it must be shown that the facts are false and," if the plaintiff is not a public figure, "that their publication was generated . . . in a grossly irresponsible manner" (*Kuan Sing Enterprises, Inc. v T.W. Wang, Inc.,* 86 AD2d 549, 550 [1st Dept 1982], *affd* 58 NY2d 708 [1982]). Stated another way, to succeed on a defamation cause of action, a person who, like the plaintiff, is not a public figure "must establish, by a preponderance of the evidence, that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties" (*Chapadeau v Utica ObserverDispatch*, 38 NY2d 196, 199 [1975]; *see Huggins v Moore*, 94 NY2d 296 [1999]; *Farber v Jefferys*, 103 AD3d 514 [1st Dept 2013]). The plaintiff also must establish that the defamatory statement was published by the defendant, that is, that it was communicated to someone other than the plaintiff himself (*see*

**155964/2019   MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN**
**Motion No.  002**

Page 18 of 20

*Sibley v Meridian Wildlife Servs., LLC*, 234 AD3d 1044, 1045 [3d Dept 2025]). False allegations that a person has committed a crime constitute slander per se, which relieves the plaintiff of the requirement that he or she demonstrate special damages (*see Liberman v Gelstein,* 80 NY2d 429, 435 [1992]). The defendants' submissions, as described above, revealed the existence of triable issues of fact as to whether White committed defamation per se by accusing the plaintiff, in front of others, of criminal trespass, possession and use of illicit drugs, and public intoxication, which are crimes or criminal violations (*see* Penal Law §§ 140.10[a]; 220.09; 240.40), and asserting those allegations to those third parties. Hence, the plaintiff was not obligated on this motion to raise a triable issue of fact as to whether he sustained special damages directly as a consequence of the defamatory statements, and that branch of the defendants' motion seeking summary judgment dismissing the defamation cause of action against White must be denied.

A conversion occurs "when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession" (*Colavito v New York Organ Donor Network, Inc.,* 8 NY3d 43, 49-50 [2006]; *see Reif v Nagy*, 175 AD3d 107, 120 [1st Dept 2019]). The elements of conversion are "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights" (see *Pappas v Tzolis*, 20 NY3d 228, 234 [2012] citing *Colavito v NY Organ Donor Network, Inc.*, 8 NY3d 43 [2006]). A plaintiff who establishes that a defendant, without authority, exercised dominion over his or her personal property, whether tangible or intangible, is entitled to recover the value of the property (*see Tyrhoff v Nationwide Mut. Ins. Co.*, 8 NY3d 283, 288, 291 [2007]). Once again, by submitting the verified pleadings, verified bill of particulars, and deposition transcripts, the defendants submitted documents that reflected the existence of triable issues of fact as to whether, by seizing the plaintiff's keys and his naproxen sodium tablets from him, and refusing to return them, they converted those items to their own use, and whether the plaintiff was

**155964/2019   MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN**
**Motion No.  002**

Page 19 of 20

19 of 20

damaged thereby, even if the extent of damages may be minimal. Hence, that branch of their motion seeking summary judgment dismissing the conversion cause of action must be denied.

In light of the foregoing it is,

ORDERED that the defendants' motion for summary judgment dismissing the complaint is granted only to the extent that they are awarded summary judgment dismissing the causes of action alleging negligent infliction of emotional distress, intentional infliction of emotional distress, common-law negligence, and gross negligence, those causes of action are dismissed, and the motion is otherwise denied; and it is further,

ORDERED that, on the court's own motion, the attorneys for all of the parties shall appear for an initial pretrial settlement conference before the court, in Room 204 at 71 Thomas Street, New York, New York 10013, on September 16, 2025, at 11:00 a.m., at which time they shall be prepared to discuss resolution of the action and the scheduling of a firm date for the commencement of jury selection.

This constitutes the Decision and Order of the court.

| 8/15/2025 | | |
|-----------|--|--|
| DATE | | JOHN J. KELLEY, J.S.C. |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|------------|-----------------|------------------------|--|
| | ☐ GRANTED ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**155964/2019   MIRANDA, EVAN vs. NEW YORK-PRESBYTERIAN**
**Motion No.  002**

**Page 20 of 20**

20 of 20